### 9655

### McCORMAC *ET AL.* v. EVANS *ET AL.*

#### (92 S. E. 19.)

1. SCHOOLS AND SCHOOL DISTRICTS—USE OF PROPERTY—SUBSTITUTION.— Where a schoolhouse was erected by a fund raised by a subscription, which provided that the building should be used as a school so long as that was desired by any of the subscribers and thereafter, with the consent of all the parties, an old church building was substituted

for the schoolhouse, under an agreement that it should be used for the school, the rights of the subscribers are the same with reference to that building as if it were the original schoolhouse built under the agreement.

2. Dedication — Use of Property — Presumptions. — Where a building erected for use as a school was used only for that purpose, no length of such use would raise a presumption of a general dedication or a waiver by the subscribers of their right to restrict the use to the original dedication.

3. Estoppel — Failure to Object — Necessity of Reliance. —The fact that one of the subscribers to a fund for a school building was present at a meeting at which a resolution to turn the building over to another use was adopted, and made no objection thereto, does not estop him from thereafter objecting, where there was no evidence that any one relied on his silence or was misled by it, or it appeared that the others knew before the meeting that he refused to consent in proposed action.

4. Estoppel—Effect—Persons Estopped.—In a suit by two subscribers to a school building fund to restrain a proposed use of the building for a different purpose, estoppel of one plaintiff's right to object does not defeat the right of the other plaintiff to the relief.

5. Injunction—Adequate Remedy at Law—Use of Property.—Subscribers to a school building fund are entitled to injunction to restrain the proposed removal of the building, though the trustees and the school district are solvent, since it would be impossible to prove or estimate the damages caused by the loss of plaintiff's right to have a school maintained at that place, and, therefore, the remedy at law is inadequate.

6. Injunction—Subject of Relief—Description of Property.—Wrongful acts resulting in the destruction of plaintiff's property or any interference with his use of it may be prevented by injunction.

7. Injunction—Use of Property—Defenses.—The right of subscribers to a school building fund to prevent the demolition and removal of the building cannot be denied because they have adjoining lands on which they can build a schoolhouse.

Before Shipp, J., Dillon, May, 1916.    Reversed.

Suit by E. A. McCormac and another against W. W. Evans and others.   Judgment for defendants, and plaintiffs appeal.

Footnote.—As to what causes reverter after dedication, see notes in 1 A. & E. Ann. Cas. 455, 11 L. R. A. (N. S.) 589, 35 L. R. A. (N. S.) 603 to 606, 44 L. R. A. (N. S.) 1220.

The statement of facts in the Circuit decree is recited in the dissenting opinion of the CHIEF JUSTICE, and referred in the opinion of the Court.

*Messrs. P. B. Sellers* and *Townsend, Rogers & McLaurin,* and *J. W. Johnson,* for appellants.

*Messrs. Sellers & Johnson* cite: *As to distinction between legal and equitable causes of action:* Pom. Code Rem. (3d ed.), secs. 521, 522, 523. *This action is equitable:* 27 S. C. 77; 46 S. C. 144; 1 Pom. Eq. Juris. (3d ed.), sec. 130. *There can be no estoppel by conduct or concealment on the part of plaintiffs in this case, as the school district authorities were not induced to do something to their injury or prejudice:* 16 Cyc. 276c, 726, 4; 42 S. C. 348; Bigelow on Estoppel (3d ed.) 434; 13 S. C. 29; 19 S. C. 201; 67 S. S. 456; 53 S. C. 315; 39 S. C. 203; 32 S. C. 511; 30 S. C. 612; 28 S. C. 38; 15 S. C. 611; 16 Cyc. 742, 744; 57 S. C. 507; 27 S. C. 53; 13 S. C. 371 and 35. *There has been no dedication by plaintiffs:* 4 Fed. 161; 9 A. & E. Enc. of L. (2d ed.) 23, 28, 29, 30, 31, 37, 68, 78. *Retention of jurisdiction to award complete relief:* Eaton Eq. 39.

*Messrs. Gibson & Muller,* for respondents, cite: *As to power of trustees:* Civil Code, secs. 1753, 1755, 1761. *Estoppel:* 13 Cyc. 454, 478. *Complete legal remedy:* Joyce Injunctions, sec. 26; 78 S. C. 575; 44 S. C. 256.

March 26, 1917.

The opinion of the Court was delivered by MR. JUSTICE HYDRICK.

The facts are fully stated in the opinion of the Circuit Court. It appears that, by consent of all parties interested,

the old church building, which is the subject of this action, was substituted for the schoolhouse that was built on the church grounds under an agreement with the church authorities that it should be used as a schoolhouse as long as any of the subscribers to the building fund desired a school kept there. Therefore, the rights of the parties must be determined as if the building in question were the schoolhouse built under that agreement.

The dedication of the building to public use was limited to the special purpose mentioned at that particular place. It follows that so long as it was used for that purpose at that place, none of the subscribers had any right to complain, because the use was strictly within the limits of the dedication. That being so, no length of such use would raise a presumption of a more general dedication, or constitute a waiver of the right of the subscribers to restrict the use within the limits of the dedication. Therefore the Court below erred in presuming from the use for more than 20 years within the limits of the dedication a general dedication to the use of the public schools of that district, and also in holding that plaintiffs had waived their rights in the property by allowing it to be used for a public school at that place.

The rule is thus stated in 13 Cyc. 498:

"If a dedication be made for a specific or defined purpose, neither the legislature, the municipality nor the general public has any power to use the property for any other purpose than the one designated. This can only be done under the right of eminent domain. Nothing can be clearer than that if a grant is made for a specific, limited and defined purpose, the subject of the grant cannot be used for another."

On the same page the author says that, under this rule, dedicated property cannot be sold, even though the proceeds be applied to other public purposes. It follows that the church authorities had no right to turn the building over to the trustees of the school district to be sold by them,

and the latter had no right to sell it, in order that the proceeds might be used in the erection of another school building at another place, without the consent of all parties interested.

It is contended that plaintiffs are estopped, because one of them (McCormac) was a member of the church, and was present at the church meeting at which the resolution turning the building over to the trustees was passed, and made no objection to it. There is not a particle of evidence that the trustees or any one else relied upon his silence to their detriment, or was misled by it. On the contrary, it appears that they knew before the meeting that he objected and refused to consent to the proposed action, and he told the trustees after the meeting, and before they did anything, that he objected to the removal of the building, and forbade them doing so. There is no element of estoppel in the case. Besides, even if McCormac were estopped, that would not affect the right of the other plaintiff to the relief sought.

The Court below erred in refusing the injunction prayed for on the ground that plaintiffs have an adequate remedy at law. This conclusion was based on the ground that, as the trustees and the school district are solvent, the remedy by action for damages is adequate. A little reflection will suffice to show that the remedy suggested is inadequate. If the building be removed, plaintiffs cannot maintain a school at that place, as they have the right to do. It would be difficult, if not impossible, to prove or estimate the damages resulting from the deprivation of that right. There is no pecuniary standard by which such damages can be measured. Besides, the injury is not altogether to the plaintiffs. It affects them and others in like plight, and their children and the children of their neighborhood, not only at present, but also in the future. From its very nature, therefore, the injury is not susceptible of being compensated in damages. But, moreover, the rule is

that wrongful acts resulting in the destruction of a plaintiff's property or the interference with his use of it may be prevented by injunction.   22 Cyc. 764.

The suggestion that, because plaintiffs have lands adjoining the church lot which they can use to build a schoolhouse on, they should be denied their right to prevent the demolition and removal of the building in question is untenable upon its face.

The judgment of the Circuit Court is reversed.

Messrs. Justices Watts and Gage concur in the opinion of the Court.

Mr. Chief Justice Gary, *dissenting*.   This is an action to enjoin the sale of a schoolhouse by the trustees of school district No. 6, of Dillon county.   The facts are thus stated in the decree of his Honor, the Circuit Judge :

"In the year 1874, a number of citizens in the community now known as Reedy Creek school district, being interested in establishing a school, got together and by private subscription raised money to build a schoolhouse.   Reedy Creek church owns a lot of land, of about two acres, and it seems to have been the consensus of opinion that if proper arrangements could be made, that the schoolhouse should be placed on the church grounds, and in pursuance of that idea an agreement was entered into with the deacons of Reedy Creek church that the schoolhouse should be placed on the church grounds, that it should be used as a place of meeting for the deacons and elders of the church, and that it should remain upon the premises so long as desired by any one of the original subscribers.   The schoolhouse was built, and within a short time of its completion was burnt, and practically the same parties rebuilt another at the same place.   This old building continued to be used until 1903, when a new church was built, and in a meeting of the congregation duly notified and held, a resolution was passed by the congregation that

old Reedy Creek church should be turned over to the trustees of Reedy Creek school, to be used as an academy, and that the old building then being used as a schoolhouse and the furniture in the old church should be sold, and the proceeds given to Reedy Creek church. The old church was so used until 1913, when old Reedy Creek school was consolidated with an adjoining district, and a new and modern schoolhouse was built. Thereupon the trustees, acting upon the suggestion of the county superintendent of education, entered into a contract with their codefendant, D. D. McRae, to sell the old building, and he was proceeding to tear it down and move it when this suit was brought. * * * The testimony tends to establish, and it was admitted by counsel in open Court, that ever since the establishment of school districts in the State, the property in question has been handled and entirely controlled by the board of trustees of the school district; Reedy Creek school district being recognized as one of the established school districts of the State. During all that time, and for more than 20 years, the original subscribers never intimated that they had any claim, nor attempted in any manner to exercise any control over the property, but, on the contrary, it has been practically dedicated to the school district. In 1903, as above set forth, it was by resolution of the church, so far as it had power, formally turned over to the trustees, and according to the testimony and admissions of counsel it had been so used for many years previous to that time."

From these facts he reached the conclusion that:

"The plaintiffs have unquestionably waived any right, title, or interest they may have formerly had therein, even conceding that they had such right, and are not now in a position to assert a right which they may have formerly had."

The Circuit Judge thus states the reasons for the error into which the plaintiffs have fallen:

"The error into which plaintiffs have fallen is, in treating the controversy in question, as one between plaintiffs and the church, when, as a matter of fact, it is a controversy between plaintiffs and trustees of the public school district."

It will be observed that Reedy Creek church was not made a party to this action, and its rights therefore are not involved. The Circuit Judge, however, says:

"There's nothing in the testimony tending to show that the church authorities are attempting to violate the alleged contract, and hence in the present controversy the plaintiff can derive no advantage therefrom."

There were about a dozen original subscribers, whose names appear in the testimony; but none of them, except the two plaintiffs, are parties to this action.

What was said in *Bannister* v. *Bull,* 16 S. C. 220, is applicable to the other subscribers now living:

"They had the right to refuse to sue. They may wish to have a separate suit for their interest or they may not intend to set up their rights at all."

That case also shows that section 168 of the Code of Civil Procedure, providing that one or more may sue for the benefit of the whole, has no application to this case. Therefore the injunction should not be granted, unless it appears from the testimony that these particular plaintiffs are entitled to relief. The testimony shows that the plaintiff, E. A. McCormac, was a trustee at the time the two school districts were consolidated, and that he signed the petition for the consolidation. He is therefore estopped from relying upon the fact that the consolidation was illegal. John D. Alford, the other plaintiff, is a bachelor, and has no children to be affected by the consolidation. They are therefore not in a position to seek the equitable aid of the Court.

Mr. Justice Hydrick relies upon the proposition:

"That the church authorities had no right to turn the building over to the trustees of the school district, to be sold by them, and the latter had no right to sell it in order that the

proceeds might be used in the erection of another school building at another place, without the consent of all parties interested."

This proposition is sound, and we will proceed to show that not only the church authorities (who had a certain interest in the building), but also the subscribers, consented for the building to be dedicated to the school trustees for school purposes, without a special limitation upon their powers.

H. N. Cousar testified as follows:

"I am an elder in Reedy Creek Presbyterian church, and am clerk of the session. I keep a record of the minutes of the session. My record shows that on March 22, 1903, at a congregational meeting of Reedy Creek Presbyterian church, by a unanimous vote, the following resolution was passed: 'That the old Reedy Creek church be turned over to the trustees of Reedy Creek school, to be used as an academy, and that the building now used as a schoolhouse, and the furniture in the old church be sold, and the proceeds given to Reedy Creek church.' I was present at the meeting and took those minutes. That resolution was passed in regular meeting of the church members, after giving two weeks' regular notice. That was the proper way to pass it in regular meeting of the congregation."

The plaintiff, John D. Alford, testified that "most of the subscribers to that fund were members of Reedy Creek church." The plaintiff, E. A. McCormac, testified:

"I was present at the time the new church building was completed, and the old schoolhouse was turned over to the church. Mr. Richards was the first man to make the proposition. He made it to the trustees of the school. * * * I was a member of the church and a trustee when the old church was substituted for the school building."

The defendant, W. W. Evans, one of the school trustees, testified:

"When the consolidation was first started, Mr. McGregor was the principal leader. The trustees took an active part

in it.   Mr. McCormac also took a part, and signed the
petition for it."

McCormac was at that time also one of the school trustees.
E. A. McCormac, when recalled, testified as follows:

"Q. Mr. McCormac, it is said in the testimony of some
of these gentlemen that you took part in the establishment
of the Minturn school.  Please state what you did.  A. No,
sir; I did not.  When they first talked of consolidating those
schools, and the question was raised where they would like
to put the building, I offered to give them two or three
acres of land on a hill between my house and Evans' and
would give them $50 towards erecting a school building, if
they would put it there.  They wanted to vote bond issues
before they would decide on the site of the school.  I told
them I would not support it until they decided positively
where they would put the building.  They wanted to put
it in a pond, on the other side of the railroad on my place.
I went still further and made another proposition, that if
they would put it on the Steed place, and from under the
influence of mischief that was going on there with no police,
that I would give $50 towards paying for the lot."

It will be observed that the plaintiff, McCormac, was
present at the meeting of the congregation in 1903, when
the building in question was dedicated to the trustees, and
that he consented to the adoption of the resolution making
the dedication; that he was a school trustee at that time,
and also at the time of the consolidation in 1914, and
signed the petition for the consolidation; that the resolution
was adopted without any limitation upon the powers of
the trustees, other than those imposed by law; that as most
of the contributors were members of Reedy Creek church,
and the said resolution was unanimously adopted at a con-
gregational meeting of the church, the only reasonable sup-
position is that most, if not all, the contributors were pres-
ent and assented to the dedication; that McCormac did not
object to changing the location of the building, provided the

change was acceptable to him. There is nothing in the record from which a reasonable inference to the contrary can be drawn. Having reached this conclusion, we proceed to determine whether the trustees, in the absence of a special limitation upon their powers, had the authority to sell the building. The rule in such cases is thus stated in 8 R. C. L. 33:

"In any case, however, such use is authorized as is fairly within the terms of the dedication, and reasonably serve to fit the property for enjoyment by the public, in the manner contemplated. The dedicator is presumed to have intended the property to be used, within the limitation of the dedication, in such way by the public as will be the most convenient and comfortable, and according to not only the proprieties and usages known at the time of the dedication, but also to those justified by lapse of time and change of conditions."

Furthermore, the acceptance of the schoolhouse for school purposes was subject to the provisions of the statute, relative to the sale of such property by the trustees. Section 1755 of the Code of Laws (Civ. Code) 1912 provides that:

"The school trustees of the several school districts are authorized and empowered to sell school property, real or personal, in their school districts whenever they deem it expedient to do so, and to apply the proceeds of sale * * * to the school fund of the district, wherein such sale is made."

Section 1761 provides that the board of trustees shall also have authority, and it shall be their duty:

"(1) To provide suitable schoolhouses in their districts, and to make the same comfortable, paying due regard to any schoolhouse already built or site procured, as well as to all other circumstances proper to be considered so as best to promote the educational interests of their district. * * *

"(5) To take care of, manage and control the school property of the district."

For these reasons I dissent.

4—107.

Mr. Justice Fraser, *dissenting.* I dissent. This is a proceeding to enjoin the trustees of a school district from pulling down and carrying away a building formerly used by the school district as a schoolhouse.

The plaintiff alleges that they and others subscribed certain sums of money to build a schoolhouse on the grounds of the Reedy Creek Presbyterian church. That house was destroyed by fire, and a new bulding was erected. The plaintiffs subscribed to the new school building. The church needed a new building and sold the new schoolhouse, used the proceeds of sale in the erection of a new church, and turned over the old church building to the school district to be used as a schoolhouse, reserving the right to use it for certain church purposes. The old church was then used as a schoolhouse for some years. The school districts were consolidated and built a new schoolhouse on another location. The church then turned over the old church schoolhouse to the school district to be sold and the proceeds applied to the new schoolhouse. The plaintiffs, who were subscribers to the funds with which the schoolhouses were built, bring this proceeding to enjoin the removal of the church schoolhouse, claiming that its removal was in contravention of a written contract between the subscribers to the school fund and the church. These subscribers were members of this church and got the benefit of the schoolhouse fund in their new church. This written contract has been lost and the plaintiffs have attempted to prove the written contract by parol, and, as usually happens, the proof is vague, indefinite, and uncertain. One witness says the agreement was that the building itself was the subject of the agreement, and another that the agreement referred to the use of the land upon which the schoolhouse was to be erected; *i. e.:*

"They were to have the land as long as one of the subscribers wanted a school building. It was expressed in there just that way."

If the agreement refers to the schoolhouse, the proceeds of sale are in the new church. If the parties are entitled to follow the fund, then the fund is in the new church, and not in the old. If the agreement referred to the land, the injunction will not lie, because there is no effort to dispose of the land. One of the plaintiffs testified:

"I was present at the church meeting when this question was brought up, after the erection of the new school building. I did not object to it, and had nothing to say, because I knew it was not right."

The time to say "it was not right" was at the church meeting before the sale. When one does not speak when he ought to speak, the Court of equity will not hear him speak when he ought to keep silent. If the church has taken the property purchased by moneys subscribed by its members, and sold it, and converted the proceeds of sale to other uses, then the church should respond to its members.

There has been shown no sufficient agreement to substitute the old church for the second schoolhouse, and Judge Shipp was right when he refused to grant the injunction, and his order should be affirmed.