### MILLER *ET AL.* v. CITY OF COLUMBIA

(136 S. E., 484)

1. DEDICATION—PROPERTY DEDICATED FOR SPECIFIC OR DEFINED PURPOSE MAY NOT BE USED FOR ANY OTHER PURPOSE.—If a dedication is made specific or defined purpose, property may not be used for any other than designated purpose, whether such use be public or private, and whether dedication is common law or statutory dedication.

2. DEDICATION—CITY HELD WITHOUT AUTHORITY TO USE PROPERTY DEDICATED FOR PARK PURPOSES' FOR STADIUM.—Where dedication of park to city was under special agreement requiring its use as public park with maintenance of driveways, paths, beds, and plots for growth of grass and shrubbery, city was without authority to use portion thereof for building statium to be used for public and private athletic purposes.

Before TOWNSEND, J., Richland, December, 1926. Reversed and remanded for taking order for permanent injunction.

Suit by Malcolm J. Miller and others against the City of

Columbia. Order denying an injunction *pendente lite,* and plaintiffs appeal.

The order of Judge Townsend, directed to be reported, is as follows:

"ORDER REFUSING INJUNCTION

"This in as action by the plaintiffs, adjoining landowners, claiming an easement in the preservation of Maxcy Gregg Park, to prevent the City of Columbia from erecting a baseball or municipal athletic field and stadium in a portion of the park. The park was donated to the City by the Rembert Development Company, the deed providing, 'The said property herein conveyed to be used by the said city of Columbia for a public park for all time to come.' In the common understanding in this country, a park is a piece of ground in or near the city or town, for ornament and a place of resort of the public for recreation and amusement, and it is usually laid out as the agreement in this case provides in walks, drives, and recreation grounds. Standard Dictionary. *So. Park Commissioners v. Montgomery Ward,* 248 Ill., 304; 93 N. E., 910; 21 Ann. Cas., 127. The city accepted the gift of the land on these conditions and for these purposes, and cannot change the use or apply the property to some other use inconsistent with the dedication. *Grady v. City of Greenville,* 129 S. C., 89; 123 S. E., 494. But the erection of buildings in a park is allowable when conducive to the better enjoyment of the grounds by the public. *Attorney General v. Sunderland,* 2 Ch. Div., 634; 45 L. J. Ch., 839. *Spires v. Los Angeles,* 150 Cal., 68; 87 P., 1026; 11 Ann. Cas., 465. *McClatchey v. City of Atlanta,* 149 Ga., 648; 101 S. E., 682. *Bryant v. Logan,* 56 W. Va., 141; 49 S. E., 21; 3 Ann. Cas., 1011. The primary object of the grant was to provide a place of enjoyment and recreation for the inhabitants of Columbia; and as the proposed building and changes by the City are, in the opinion of the council, in furtherance of that object, the City Council

has authority under the deed to make such changes if it deems them proper in the exercise of its discretion.

"For these reasons, it is ordered that the return of the City be adjudged sufficient, and the application for an injunction refused."

*Messrs. R. B. Herbert* and *Geo. L. Dial, Jr.,* for appellants, cite: *Dedication to public for a purpose limits use to that purpose:* 123 S. E., 494; 92 S. E., 19; 3 Hill, 155; 127 A., 789; 58 A., 38; 56 A., 272; 18 C. J., 127; 28 Cyc., 938; 3 Dillon on Municipal Corporations, 5th Ed., 1749. *Purchasers of lots adjacent to public park have peculiar right in its continuance:* 86 S. C., 281; 68 S. E., 529; 73 S. C., 241; 53 S. E., 417; 127 A., 789; 58 A., 38; 56 A., 272. *Cases distinguished:* 149 Ga., 648; 101 S. E., 682; 56 W. Va., 141; 49 S. E., 21; 150 Cal., 68; 87 P., 1026; 2 Ch. Div., 634; 45 L. J. Ch., 839. *Injunction proper remedy for illegal expenditure of public funds:* 32 C. J., 267; 270–272. *Powers of municipalities to expend public funds limited:* Const. 1895, Art. 8, Sec. 3; Civ. Code, 1922, Sec. 4423; 52 S. E., 874; 11 S. E., 434; 58 A., 38; 135 S. E., 656; 28 Cyc., 944; 19 R. C. L., 768, 771 and 781.

*Messrs. Nelson & Mullins, C. S. Monteith* and *C. T. Graydon,* for respondent, cite: *Public park defined:* 205 Pa., 1; 61 L. R. A., 332; 3 McQuillim, Ky., 2533. *What are proper park uses; erection of athletic stadium:* 97 Kan., 327; 154 P., 1014; L. R. A., 1916-D, 491; 150 Cal., 64; 87 P., 1026; 11 Ann. Cas., 465; 56 W. Va., 141; 49 S. E., 21; 149 Ga., 648; 186 N. W., 374; 189 Mich., 16; 155 N. W., 438; 266 S. W., 375; 2 Ch. Div., 634; 45 L. J. Ch., 839; 18 A. L. R., 1242 and 1246; 3 Dillon on Mun. Corp., Sec. 997. *Cases distinguished:* 127 A., 789; 58 A., 38; 56 A., 272. *City empowered to expend public funds for erection of public athletic stadium:* 115 S. C., 108; 104 S. E., 337; 115 S. C., 29; 104 S. E., 335.

January 26, 1927.

The opinion of the Court was delivered by MR. ACTING ASSOCIATE JUSTICE R. O. PURDY.

This is a suit for an injunction to prevent the City of Columbia from erecting a stadium and an athletic field in Maxcy Gregg Park, which park was given to the city by the Rembert Development Company, of which the late Mr. George R. Rembert was president. The area dedicated was 17½ acres, and the terms of its dedication will be found in the agreement with the city, which bears date March 2, 1911, and the conveyance made in pursuance of the agreement, bearing date April 22, 1911.

Appellants, by their complaint, set up their grievances, alleging that they own real estate adjacent to this park, the acceptance and possession of the park by the city in pursuance of an agreement and a conveyance, and alleging further that the city had gone upon the property, and was cutting down the trees and shrubbery planted for park purposes and was preparing to build a stadium to be used for public and private athletic purposes, to be leased to private interest for financial gain and to professional baseball clubs, and was preparing to destroy a large portion of the park, if not the entire park, in violation of its obligation to maintain it as a park, and was about to use public funds for private uses in carrying out these objects, in contravention of its powers.

A rule was issued to show cause why the city should not be enjoined from doing these acts, *pendente lite.* The city made its return to the rule, practically admitting that it was about to do all of the acts complained of, except it alleges that while the field and stadium would contain approximately 6 acres, only about 1½ acres of the 17½ acres would be taken for the purposes mentioned.

On hearing the return to the rule, his Honor, Judge Townsend, adjudged the return to be sufficient, dismissed the rule, and refused to grant an injunction *pendente lite.* Testimony having been taken and the merits of the contro-

versy having been brought into the record, it was agreed that the order of his Honor, Judge Townsend, should be deemed to be an order on the merits, and the appeal should be taken as an appeal from the Circuit Court the same as if the cause had been there tried. (Let the order of his Honor, Judge Townsend, be reported.)

The nature of the acts sought to be done by the city are clearly set forth in the testimony of its engineer, Mr. Porter, and its Mayor Dr. L. B. Owens, Mr. Porter states that a grandstand would be constructed of steel and concrete, and at the back of that will be an 8-inch brick wall. The units contemplated to be constructed at this time will lie totally in the section donated by the Rembert Development Company. The main entrance to it is almost in the middle of it. The structure is to be 25 feet high and will be 300 feet or more in length. In putting the grandstand as located, "We are closing Park Circle." "The new Park Circle does not go around the entire original grant of 17½ acres, but cuts it practically in two. It goes around the original part, except that part facing the property bought by the city from the Commercial Holding Company. We bring Park Circle a different way, and it would remain intact, but would no longer go around the original tract. The structure will be 300 feet through its entire length, with a roof over all of it. The 300-foot structure would go entirely on the original grant, with the entrance in the middle of it. There will be no trees or shrubs or walkways within these walls. The field will be turf. It will be cut off from the rest of the park by a fence." "The fence will be 7 feet high, a solid fence to obstruct the view of any one on the outside." He states further that the structures would not affect the line of sight of those houses that are on considerably higher ground than the stadium. While Mr. Porter in his direct examination refers to small areas as being contemplated to be used, we have gathered from the whole trend of his

testimony that the foregoing is an outline of the proposed stadium and athletic field.

Dr. L. B. Owens, the Mayor of the City, states that in developing this municipal field and stadium, it is the idea of the city to improve the park for park purposes and for the enjoyment and pleasure of the citizens of Columbia; that there is a demand for an athletic field, and the city has undertaken in this way to supply the need, in order to furnish facilities for the use of the city and for the physical development and for different amateur athletic associations and to be used by professional baseball players and others at suitable times, in order to help defray expenses. "There is no doubt about it increasing the value of the property, especially that on the South side most decidedly," says Mayor Owens. He says that the city desires to get professional baseball to Columbia, and one of the objects, but not the principal object of building the stadium, is to lease it to professional baseball teams, with the expectation of getting some revenue, but no definite arrangements had been made.

It was contemplated that the structures would cost about $40,000.00, which would be provided from the public funds arising from the taxpayers of the city. The heads of various organizations of Columbia, and its Chamber of Commerce favor this enterprise, recognizing the need of a stadium and athletic field. It was claimed also that the carrying out of the purposes which the city has in view would cut off from the residential section a view of dilapidated and otherwise undesirable portion of the city.

After the dedication of the 17½ acres for park purposes, the city purchased a considerable area of land adjacent thereto, and a driveway was established around the park, as contemplated by the agreement and by the conveyance. A map which is before the Court shows that the stadium would be so constructed as to close a part of Park Circle

There is not any contention on the part of the city that such is not a fact.

A number of citizens testified in behalf of the appellants objecting to the erection of the stadium and field. But the details of such testimony need not be given for a right understanding of the case, for the issues must be determined not so much upon the opinions of those interested, as by the authority conferred upon the city in relation to the park.

Those in favor of the establishment of the stadium contend that it would be beneficial to the city and an enlarged means of enjoyment for the public; while on the other hand, those opposed to it contend that it is in contravention of the powers granted to the city, and, not only so, but that the establishment of so large a stadium and athletic field would practically destroy the park for the purposes for which it was intended, and in addition thereto it will greatly interfere with the occupancy and desirability of the homes of those who bought land nearby, in the faith and expectation that the land so dedicated would be forever kept open as a park, to be beautified by the planting of grass, trees and shrubs.

With this partial sketch of the situation, the powers of the city to erect a stadium and establish an athletic field must be determined by reference to the agreement and to the conveyance, both taken together, as the deed is made in pursuance of the agreement.

The agreement bears date March 2, 1911, and its salient provisions are, that the Rembert Company for valuable considerations, among other considerations, the enhancement of adjoining property, agreed to convey the 17½ acres of land to the city, and the city on its part, covenanted particularly as follows:

"The said city of Columbia further covenants and agrees that it will open and maintain within and along the outer line of the said part a driveway around the outer portion of said part, the said driveway to be not less than forty (40) feet in

width, and the remainder of the said portion of land granted for park purposes to be within the next 12 months laid off with such cross drives, paths, beds and plots as the city may deem best, the said beds and plots to be prepared for the growth of grass and shrubbery and in future years to be planted with such trees and plants as the city may determine; and that the said land will be maintained for all time as a public park for the City of Columbia."

The conveyance made in pursuance of this agreement provides that the property so conveyed is "to be used by the said city of Columbia for a public park for all time to come, and the work of beautifying said tract of land to be begun within 12 months from the date hereof, as more fully set forth in the agreement entered into between the said city and the said company, of date March 2, 1911," "and it is further understood and agreed as a condition of said conveyance that the city of Columbia shall build within the next 12 months a driveway not less than 40 feet wide, within said tract herein conveyed, around the outer portion of said park, and maintain the same as a public driveway."

The conveyance is "in trust, nevertheless, for the uses and purposes above set forth, and the said tract of land to revert to the said company, grantor herein, should the said tract of land be converted into any other use than that of a public park or should the said city fail to build and maintain the same as a public park, as above set forth."

It is not out of place to say that the good faith of the officers of the city is in no way questioned. It is gathered from their conduct in reference to the matter that they are acting for what they believe to be the best interests of the city, and if there were in this case a general dedication for a public park, without restriction as to its use, then this Court would have neither the inclination or the power to interfere with the acts of the mayor and council. But, in making the dedication, Mr. Rembert, the president of the company, and his company, had in view not only the estab-

lishment of a pleasure resort for the citizens of Columbia, but his company owned a great deal of property adjacent to and near by the park, and the further object was to enhance the value of that property because of its proximity to the park, and the reasonable expectation was that persons would pay more for the property if they knew they could be near the park, which would be kept open for their use and enjoyment and that of the other inhabitants of the city, as a spot to be beautified and made attractive.

Naturally, as time elapsed, it would be expected that the city would, within its means, render the park more and more attractive, and the nearby property would be that much more attractive and valuable. Such was evidently in the mind of the grantor, and, there not being any ambiguity about this, the agreement and the conveyance must be the guide for the Court.

It is true that at this time the ideas of pleasure and commerce as so nearly akin to each other that it is more difficult than formerly to have and maintain property solely for pleasure, eliminating the idea of profit in connection with it. As we construe the conveyance and the agreement, it was foreign to the idea of the grantor that the park, or any part of it, should be taken for the use now sought to be made of it. These acts could be done only under a general dedication. 18 Corpus Juris, p. 127.

"If a dedication is made for a specific or defined purpose, neither the Legislature, a municipality, or its successor, nor the general public has any power to use the property for any other purpose than the one designated, whether such use be pubic or private, and whether the dedication is a common-law or a statutory dedication, and this rule is not affected by the fact that the changed use may be advantageous to the public." *Grady v. City of Greenville,* 129 S. C., 89; 123 S. E., 494.

So also, to the same effect is the case of *McCormac v. Evans,* 107 S. C., 39; 92 S. E., 19, in which it is said:

"Nothing can be clearer than that if a grant is made for a specific, limited, and defined purpose, the subject of the grant cannot be used for another."

It would be interesting to quote from many cases cited in behalf of the appellants, but that would not make the situation any clearer, and therefore citations from them would add nothing to the force of the decisions of our own Court, to which reference is above made, and these decisions, having defined the attitude of this Court, need no quotations from other cases to support them. For reference, however, the following cases are named: *Sherburne v. City of Portsmouth,* reported in 72 N. H., 539; 58 A., 38; *Hill et al. v. Borough of Belmar* (N. J. Sup.), 127 A., 789; *Fessler v. Town of Union,* 67 N. J. Eq., 14; 56 A. 272; *Marshall v. Columbia & E. C., Electric St. R. Co.,* 73 S. C., 241; 53 S. E., 417. But a further citation of authorities would only incumber the record.

An examination of the authorities cited in behalf of the city will show that in each particular case in which the act was sought to be done, the acts were within the authority sought to be exercised. In the case at bar, the limitations of the city are defined by the grantor and the city agreed to be bound by these limitations, and this is the guide of the city in dealing with the park.

Adverting to the agreement, the city agreed to:

(1) *Open and maintain* within and along the outer line of said park, a driveway around the outer portion of the park, the driveway to be not less than 40 feet in width.

(2) Within twelve months, *the remainder* of the said portion of land granted for park purposes to be laid off with such cross drives, paths, beds, and plots as the city may deem best.

(3) The said beds and plots to be prepared for growth of grass and shrubbery and *in future years to be planted with such trees and plants as the city may determine.*

(4) That such land will be maintained for all time as a public park for the city of Columbia.

The city, on its part, now proposes to:

(1) Erect a structure 25 feet high and 300 feet long, or longer.

(2) Put in a grandstand, the entrance to it to be almost in the middle of the park.

(3) To close Park Circle, and to cut it practically in two.

(4) To bring Park Circle in a different way, but not around the original tract.

(5) To have no trees or shrubs or walkways within the walls.

(6) To have this space cut off from the rest of the park by a solid fence 7 feet high.

The above comparison must settle the issues in this case against the respondent. With the greatest respect for the opinion of the learned Circuit Judge, and imputing the utmost good faith to the proponents of the measure sought to be carried out, this Court is of the opinion that the acts agreed to be done by the City of Columbia when the land was dedicated to it, and the acts now sought to be done, are wholly at variance with each other, and the latter are in contravention of the purpose of the dedication of the park, and that the purpose contemplated by the grantor would be thwarted and could not be carried out if the proposed acts on the part of the city should now be permitted to be done.

The order appealed from is reversed and the case is remanded to the Circuit Court, so that an order for a permanent injunction may be taken.

MR. CHIEF JUSTICE WATTS and MESSRS. JUSTICES COTHRAN, BLEASE, and STABLER, concur.