

# THE ATTORNEY GENERAL

## OF TEXAS

### AUSTIN 11, TEXAS

**WILL WILSON**
**ATTORNEY GENERAL**

May 30, 1961

Honorable Joe Resweber
County Attorney
Harris County
Houston, Texas

Dear Mr. Resweber:

Opinion No. WW-1074

Re: Validity of lease contract
entered into by and between
the County of Harris and Houston
Sports Association, Inc.

Your request for an opinion on the above subject matter asks the following questions:

"1. Does Harris County and Harris County Board of Park Commissioners have the authority to enter into the attached Contract with the Houston Sports Association, Inc. to operate the Harris County Sports Stadium?

"2. Does the attached Contract violate Art. 3, Sec. 52, and Art. 11, Sec. 3, of the Texas Constitution?"

On the 29th day of May, 1961, the contract in question was executed by the County Judge of Harris County, acting pursuant to an order of the Commissioners' Court of Harris County, the Board of Park Commissioners, created pursuant to the provisions of Article 6079e, Vernon's Civil Statutes, and the Houston Sports Association, Inc.

The contract furnished with your request consists of 56 pages with numerous provisions concerning various obligations of the parties and therefore, for the purposes of this opinion, we will summarize the pertinent provisions which relate to your question.

As stated in the lease agreement, this contract was entered into for the reason that the "County, pursuant to the mandate of the voters of Harris County, Texas, at a special election held on January 31, 1961, is desirous of constructing, owning and having operated, a stadium of the nature hereinafter identified upon the Leased Premises, for the use, welfare, enjoyment, entertainment and convenience of the citizens of the county."

Under the January 1961 election, the County was authorized and empowered to issue and sell general obligation bonds as follows: (1) County Park Bonds in the amount of $3,000,000 to be used primarily in the acquisition of the land described as the Leased Premises, and (2) County Park Bonds in the amount of $15,000,000 to be used in the construction and completion of the stadium, including the building, dome and air conditioning. The County, under this agreement, leases to the Houston Sports Association the property described therein for consideration of sufficient rent per year as will equal the amount which will be required by the County of Harris to make payments under the amortization schedule on the $15,000,000 bonds aforesaid and the Houston Sports Association acquires "the exclusive right to possess, use, occupy and control the Leased Premises" during the term of the lease.

The commissioners' court is a court of limited jurisdiction and has only such powers as are conferred upon it by the Constitution or statutes of this State, either by express terms or by necessary implication." Childress County v. State, 127 343, 92 S.W. 2d 1011 (1936); Hill v. Sterrett, 252 S.W. 2d 766 (Civ. App. 1952, error ref., n.r.e.); Von Rosenberg v. Lovett, 173 S.W. 508 (Civ.App. 1915 error ref.); Roper v. Hall, 280 S.W. 289 (Civ. App. 1925).

Sections 1 and 4 of Article 6081e, Vernon's Civil Statutes. provided as follows:

"Sec. 1. That any county or any incorporated city of this State, either independently or in cooperation with each other, or with the Texas State Parks Board, may acquire by gift or purchase or by condemnation proceedings, lands to be used for public parks and playgrounds, such lands to be situated in any locality in this State and in any sized tracts deemed suitable by the governing body of the city or county acquiring same; provided, however, that lands to be acquired by any such city or county for said purposes may be, in the discretion of the governing body thereof, situated within the State, either within or without the boundary limits of said county and within the limits of said county wherein said city lies or is situated."

"Sec. 4. The management in charge of any park created by authority of this Act shall have the right to sell and lease concessions for the establishment and operation of such amusements, stores, filling stations and all such other concerns are are consistent with the operation of a public park, the proceeds

of such sales and rentals to be used for the improvement and operation of the park."

Relating to county park properties and facilities, Sections 9 and 10 of Article 6079e, V.C.S., authorize the Park Board, with the approval of the Commissioners' Court, to enter into any contract, lease or other agreement connected with or incidental to or in any manner affecting the acquisition financing, construction, equipment, maintenance or operation of any facility or facilities located on or to be located on or pertaining to any park or parks administered by the Board and any such contract, lease or other agreement may be for such length or period of time and upon such terms and conditions as may be prescribed therein. Section 12 of Article 6079e recognizes as a park purpose the construction of "stadia, coliseums, auditoriums, athletic fields, pavilions and buildings and grounds for assembly, together with parking facilities or other improvements incidental thereto."

The park under consideration, including the stadium, is specifically to be used for "sporting events, rodeos, festivals, fairs, recreational activities of all kinds, concerts, conventions and civic events of all kinds" in addition to the playing and conducting of professional baseball and football games.

In City of Fort Worth v. Barlow, 313 S.W. 2d 906 (Civ. App. 1958, error ref., n.r.e.) the court stated:

"In the light of the law, as followed in the above cited cases, the city had the legal right to enter into the lease contract with Beach Company. The lease obligated the Beach Company to do, in the public interest, what the city could have done through its own servants. The lease was not illegal. . . ."

In City of Fort Worth v. Barlow, supra, the lease agreement referred to by the above quote concerned leasing by the city of a swimming beach, whereby the Beach Company was obligated to make the area an outstanding swimming center.

Under the authority of City of Fort Worth v. Barlow, assuming that the County of Harris has the authority to construct the stadium in question, it is our opinion that the lease agreement executed May 29th, 1961, obligates the Houston

Sports Association to do in the public interest what the County could have done through its own servants and, in the event that the County is authorized to construct the stadium in question for the purposes stated above, the lease is legal. Therefore the question presented is whether, pursuant to the provisions of Articles 6081e, and 6079e, V.C.S., the County has the authority to construct a stadium on a park owned by the County to be used in the conduct of professional baseball and football games, sporting events, rodeos, festivals, fairs, recreational activities of all kinds, concerts, conventions and civic events of all kinds.

In discussing public parks, the court stated in King v. Sheppard, 157 S.W. 2d 682 (Civ.App. 1941, error ref., w.o.m.);

> "In almost every jurisdiction, both state and federal, the courts of this country have held that the Legislature or the Congress may make appropriations to purchase land and maintain public parks without any specific designation of such power in their respective constitutions. These decisions, although recognizing that in the memory of men now living the proposition of taking land for a compensation for public parks may have been regarded as a novel exercise of legislative power and although many things which in the immediate past were regarded as luxuries, or altogether unknown, may have become necessities, hold that the establishment of public parks affect the health, comfort, pleasure, taste, education, and the mental and physical health of the people, and are thus conducive to the public welfare of the people. . . .
>
> " . . .
>
> " . . . as used in modern and present times in America the term 'park' usually signifies an open or inclosed tract of land set apart for the recreation, and enjoyment of the public; or, 'in the general acceptance of the term, a public park is said to be a tract of land, great or small, dedicated and maintained for the purposes of pleasure, exercise, amusement, or ornament; a place to which the public at large may resort to for recreation, air, and light.'. . ."

and held that the Legislature was authorized to make an appropriation for the purchase of the land now constituting the Big Bend National Park and to transfer it to the United States government.

Likewise, in Conley v. Daughters of the Republic, 106 Tex. 80, 156 S.W. 197 (1913), the court held that the State had the authority to acquire title to the Alamo property and to place that property in the custody of the Daughters of the Republic, a private corporation.

In City of Dallas v. George, _____ Tex. _____, 169, S.W. 2d 473, (1943) the court upheld the validity of a contract between the City of Dallas, State Fair of Texas and R.B. George, whereby George agreed to advance a sum of money for the use of the State Fair of Texas in building a racetrack on property belonging to the City of Dallas which the State Fair of Texas was entitled to use exclusively.

For additional Texas cases on this question see City of Port Arthur v. Young, 337 S.W. 2d 385 (Civ. App. 1931, error ref.); Lewis v. City of Fort Worth, ____Tex.____,89 S.W. 2d 975 (1936).

Aquamsi Land Co. v. City of Cape Girardeau, 142 S.W. 2d 332 (Sup.Ct. of Missouri No. 2, 1940) involved an attack on the expenditure of bond proceeds for a "public park", the erection of "community building and stadium with indoor court for games and community activities and for landscaping and grading the grounds, building a race track, athletic field, drives, entrances, etc." The court in that case held that such construction was a proper park usage, stating:

> "There is no doubt in our minds about the fact that the contemplated athletic facilities come within proper park usage. It was ruled in Miller v. City of Columbia, 138 S.C. 343, 351, 126 S.E. 484, that an athletic stadium could not be built in a certain public park in that city, but that was because such use would violate restrictive covenants contained in the private grant by which the park was dedicated. In the instant case the large arena building, with a floor area of 86 feet by 126 feet, and a stage 20 feet by 60 feet, is adapted to public speaking of an educational religious or political nature, theatrical and musical entertainments, dances and indoor athletics. Another hall in the building will accomodate smaller gatherings, banquets and exhibits of various kinds. We see no objection to that. . . ."

For additional authorities see annotations 144 A.L.R. 487-513.

In view of the foregoing authorities, it is our opinion that the construction of the stadium in question is a proper park usage and is within the authority of the Commissioners' Court of Harris County, pursuant to the provisions of Articles 6081e and 6079e, Vernon's Civil Statutes.

Section 52 of Article III of the Constitution of Texas provides:

"The Legislature shall have no power to authorize any county, city, town or other political corporation or subdivision of the State to lend its credit or to grant public money or thing of value in aid of, or to any individual, association or corporation whatsoever, or to become a stockholder in such corporation, association or company; . . ."

Section 2 of Article XI of the Constitution of Texas provides:

"No county, city or other municipal corporation shall hereafter become a subscriber to the capital of any private corporation or association, or make any appropriation or donation to the same, on in anywise loan its credit; but this shall not be construed to in any way affect any obligation heretofore undertaken pursuant to law."

As noted above, the lease contract under consideration calls for a consideration of approximately $15,000,000 and the Houston Sports Associaton is obligated to do in the public interest what the County could have done through its own servants. Therefore, the lease contract is not in violation of Section 52 of Article III of the Constitution of Texas. City of Fort Worth v. Barlow, supra.

In Barrington v. Colinos, ___ Tex. ___, 338 S.W.2d 133 (1960), the City of Beaumont and the State of Texas agreed to finance the removal of a span of railroad from its location in the city to another. The City was to pay all expenses of the project in excess of $550,000 and the State was to have the work done and was to contribute $550,000 toward the expense. Certain taxpayers sought to invalidate the contract. The court held, in construing the provisiosn of Section 3 of

Honorable Joe Resweber, page 7 (WW-1074).

Article XI of the Constitution of Texas:

" . . . Under the Constitution of 1869
and a statute enacted by the Legislature
in 1871, the counties and municipalities
of Texas were authorized to aid such construc-
tion by taking stock in and making loans
or donations to railroad companies. The
primary purpose of Article XI, Section 3, is
to deprive these political subdivisions of
that power. It does not prohibit all business
dealings with private corporations and asso-
ciations, but minicipal funds or credit may
not be used simply to obtain for the community
and its citizens the general benefits resulting
from the operation of such an enterprise. On
the other hand an expenditure for the credit
accomplishment of a legitimate public and
municipal purpose is not rendered unlawful by
the fact that a privately owned business may
be benefited thereby."

The contract in question does not seek to have the
County become a subscriber to the capital stock of any pri-
vate corporation nor to make any appropriation or donation
to any private corporation nor otherwise loan its credit.
On the contrary, the County of Harris is receiving a valuable
consideration from the Houston Sports Association and the
Houston Sports Association is obligated to carry out the
public purpose heretofore stated. It is, therefore, our
opinion that the contract in question does not violate the
provisions of Section 3 of Article XI of the Constitution
of Texas.

SUMMARY

The lease contract executed by the County of
Harris and the Houston Sports Association, Inc.,
whereby the County of Harris leases to Houston
Sports Association a stadium located on county
owned property for the purpose of conducting
therein sporting events, rodeos, festivals,
fairs, recreational activities of all kinds,

concerts, conventions and civic events of
all kinds, in addition to the playing and
conducting of professional baseball and
football games, is valid.

Yours very truly,

WILL WILSON
Attorney General of Texas

By John Reeves
John Reeves
Assistant

JR:ms:mfh

APPROVED:

OPINION COMMITTEE
BY W. V. Geppert, Chairman

Milton Richardson
Houghton Brownlee, Jr.
Sam Wilson
Linward Shivers

REVIEWED FOR THE ATTORNEY GENERAL
BY: Morgan Nesbitt.