23861

TIMBERLAKE PLANTATION COMPANY, Plaintiff v. COUNTY OF LEXINGTON, South Carolina, Columbia Cable T.V. Company, Inc., and Star Cable Associates, Defendants, of whom Columbia Cable T.V. Company, Inc. is Respondent, and Star Cable Associates is Petitioner.

(431 S.E. (2d) 573)

Supreme Court

*Nina Nelson Smith, Julie Jeffords Moose,* and *C. Mitchell Brown,* all of *Nelson, Mullins, Riley, and Scarborough,* Columbia, and *Leonard J. Marisco,* of *Buchanan Ingersoll, P.C.,* Pittsburgh, PA, *for petitioner.*

*Frank R. Ellerbe, III, J. Kershaw Spong,* and *D. Reece Williams,* all of *Robinson, McFadden & Moore, P.C.,* Columbia, *for respondent.*

*Michael B. McKeithen, pro-se.*

*Jeff M. Anderson,* of *Bouknight, Nicholson, Davis, Frawley, and Anderson,* Lexington, *for County of Lexington.*

Heard Mar. 22, 1993.

Decided May 17, 1993.

HARWELL, Chief Justice:

This is a declaratory judgment action in which the Court of Appeals held that a cable television company's contract to become the exclusive provider of cable service to a residential development effectively created a monopoly, thereby inhibit-

ing competition in violation of section 601 of the Federal Cable Communications Policy Act of 1984, 47 U.S.C. § 521 (1991). *Timberlake Plantation Co. v. County of Lexington,* — S.C. —, 415 S.E. (2d) 824 (Ct. App. 1992). We granted certiorari and affirm as modified.

## I. FACTS

Timberlake Plantation Company (Timberlake) is the developer of Timberlake Plantation, a residential community located on Lake Murray in Lexington County. In late 1986 or early 1987, Joseph Phillips (Phillips), Timberlake's vice president of development, contacted several cable television companies, including Columbia Cable T.V. Company (Columbia) and Star Cable Associates (Star), for the purpose of obtaining cable service for Timberlake Plantation. On May 4, 1987, after Columbia declined to provide service, Timberlake and Star entered into an agreement whereby Star would provide cable service to Timberlake Plantation. Paragraph two of the agreement provides:

Exclusive. Owner [Timberlake Plantation Company] agrees that he will not allow any company or person, other than SCA [Star], to supply CATV or SMATV service at the Property and to install wires or equipment for the terms of this Agreement. Owner agrees that he will not use or permit the Property to be used in any manner which could interfere with SCA's intended use of the property, that is, for the transmission and/or reception of television and other electrical signals. . . .

In August 1988, Timberlake filed a final plat with the Lexington County Register of Mesne Conveyance that dedicated certain roads within Timberlake Plantation for public maintenance. The plat contains the following written statement signed by Phillips:

I hereby certify that I am a Vice President of Timberlake Plantation Company . . . and that Timberlake Plantation Company adopts this plan of subdivision with its free consent, establishes easements and rights-of-way as noted, *and dedicates all roads and associated storm drainage for public maintenance.* . . . Furthermore, Timberlake

Plantation Company, as owner of the property shown and described hereon, *reserves unto itself certain rights as to any encroachment into the established easements and rights-of-way above. Any such encroachment of easements and rights-of-way will require prior written recorded approval of Timberlake Plantation Company or its assignee, Timberlake Plantation Property Owners' Association, Inc.* (Emphasis added.)

In late 1988, Columbia obtained encroachment permits from Lexington County to lay cable along the public rights-of-way within Timberlake Plantation. Star asserted that Timberlake was required to exclude Columbia from Timberlake Plantation pursuant to their agreement that Star would be Timberlake's exclusive provider of cable service. Timberlake filed this declaratory judgment action to resolve the dispute.

The trial judge permanently enjoined Columbia from entering Timberlake Plantation for the purpose of providing cable service. This ruling was based on the trial judge's finding that the limited dedication of roads and drainage systems "for maintenance only" did not create public easements that Lexington County had authority to authorize a third party to use, enter upon, or occupy. Columbia appealed and the Court of Appeals reversed, holding that the Star-Timberlake agreement was inconsistent with the Federal Communications Policy Act's goal of encouraging competition.

### III. DISCUSSION

Star contends that section 601 of the Federal Communications Policy Act of 1984, 47 U.S.C. § 521 (1991), authorizes cable franchises to install their equipment in public easements and rights-of-way only. According to Star, the Court of Appeals erred in relying on section 601 because there are no public easements in Timberlake Plantation. We find that the dedicated roads within Timberlake Plantation are public easements and, therefore, need not reach Star's assertion that section 601 does not authorize access to private easements.

Star argues that the dedication of roadways within Timberlake Plantation was not a complete and unequivocal dedication because Timberlake purported to reserve the right to control the use of all easements and rights-of-way. To support this

proposition, Star points out that public dedications for a limited purpose are permissible, and that where the dedicator's intended use of the property is clearly and specifically expressed, no deviation from such use may be permitted, no matter how advantageous the changed use may be to the public. *Knoerr v. Crews*, 246 S.C. 174, 177, 143 S.E. (2d) 120, 121 (1965) (citing *McCormac v. Evans*, 107 S.C. 39, 42, 92 S.E. 19, 20 (1917)). However, Star's reliance on the rule recited in *Knoerr* is misplaced.

The essence of a dedication is that it shall be for the use of the public at large. *Safety Building & Loan Co. v. Lyles*, 131 S.C. 542, 128 S.E. 724 (1925). A dedication must be made to the use of the public exclusively, and not merely to the use of the public in connection with a user by the owners in such measure as they may desire. *Id.* at 545, 128 S.E. at 724. In its effect upon the landowner's rights, there is no essential difference between a dedication and a grant. *Grady v. City of Greenville*, 129 S.C. 89, 95, 123 S.E. 494, 497 (1924). It is clear then, that while a landowner may dedicate land for a specific, limited, and defined purpose, he cannot retain discretion to alter or control future use of the property once it has been accepted by the public. Accordingly, we find that Timberlake's attempt to retain discretionary control of property dedicated to the public was ineffective.[1]

Star further argues that the roadways within Timberlake Plantation were dedicated for the limited purpose of receiving public maintenance. According to Star, the public acquired a mere right of passage in exchange for the obligation to maintain Timberlake Plantation's roads. We disagree.

The grant of a public street or highway must be presumed to have been made not for such purposes and usages only as were known to the landowner at the time of the grant, but for all purposes, present and prospective, consistent with its character as a public highway, and not actually detrimental to the abutting real estate. The convenience and advantage of the public at large must be regarded

---

[1]The contrary interpretation of *Knoerr* urged by Star would allow private landowners to usurp governmental authority in the regulation of public easements and rights-of-way. *See* S.C. Code Ann. § 57-17-10 (1991) (county supervisor and governing body of county shall have the control and supervision of county roads).

as objects contemplated when the grant was made. *Leppard v. Central Carolina Telephone Co.*, 205 S.C. 1, 8, 30 S.E. (2d) 755, 757 (1944). We find that Timberlake's attempt to place restrictions on the use of public roads and their attendant rights-of-way ineffective, and hold that the dedication of roads within Timberlake Plantation created public easements for use consistent with their character. Accordingly, we turn to whether Columbia may install its cable in those easements.

■   S.C. Code Ann. § 58-12-10 (Supp. 1992) provides:

Any cable television company may, upon the approval of the governing body of the city or county, construct, maintain, and operate its cable . . . over, beneath, or along any' of the highways or public roads of the State. . . .

Our primary function in interpreting a statute is to ascertain and give effect to the intention of the Legislature. *Browning v. Hartvigsen*, 307 S.C. 122, 414 S.E. (2d) 115 (1992). The language of section 58-12-10 clearly expresses the Legislature's intent to grant cable television companies access to the highways and public roads of this state for the purpose of installing and operating cable television where, as here, the local governing body has granted its approval. Consequently, we hold that any cable television company may construct, maintain, and operate its cable along publicly dedicated roads in Timberlake Plantation in accordance with the provisions of the South Carolina Cable Act, S.C. Code Ann. § 58-12-10 to -130 (Supp. 1992).

Our ruling makes it unnecessary to address the question whether state and federal law authorizes the use of private easements. Accordingly, the opinion of the Court of Appeals is

Affirmed as modified.

CHANDLER, FINNEY, TOAL and MOORE, JJ., concur.