597 S.E.2d 885

**WDI MEREDITH & COMPANY, Appellant,**

v.

**AMERICAN TELESIS, INC., d/b/a American Telesis, Respondent.**

**No. 3805.**

Court of Appeals of South Carolina.

Heard April 7, 2004.
Decided June 1, 2004.

Jack Meredith, for Appellant.

S. Jahue Moore and M. Ronald McMahan, Jr., both of West Columbia, for Respondent.

STILWELL, J.:

In this breach of contract action, WDI Meredith & Company asserts the trial court erred in ruling American Telesis was not bound to an agreement signed by the company's vice president. We affirm in part, reverse in part, and remand.

## BACKGROUND

Husband and wife Steven and Monica Hesling each owned half the shares of American Telesis, a wholesale telecommunications firm. Monica was the company's president and treasurer and Steven served as secretary and vice president of marketing. While Steven and Monica were in the midst of a "tough separation," they agreed she would spend very little or no time at the office, and he would be at the office running the business. During this time, Steven met with Jack Meredith, the sole proprietor of WDI, a company in the business of "[i]dentifying, structuring, and negotiating mergers and acquisitions of middle market companies." On numerous occasions the two discussed the process of selling American Telesis.

At Meredith's request, Steven signed a document entitled "Exclusive Investment Banking and Consulting Agreement." In the agreement, American Telesis retained WDI to provide consulting services for a variety of business endeavors includ-

ing finding a purchaser for the company. In return for WDI's services, American Telesis agreed to pay WDI a monthly fee of $1500 as well as a $1500 retainer. Additionally, if an entity located by WDI purchased American Telesis, the agreement entitled WDI to a scaled percentage of the total consideration. The agreement also established a minimum fee: "In any event, the total fee to be paid to Consultant at closing shall not be less than $100,000.00." The agreement also provided WDI would be entitled to half of any back-out penalty received by American Telesis if a potential purchaser backed out of a deal:

> Any back-out penalty, settlement or other similar termination consideration paid to Client by a third party shall be divided equally between Client and Consultant. Such amount shall not exceed Consultants [sic] minimum fee.

According to Meredith, WDI began working under the agreement's terms immediately after Steven signed the document. This included mailing letters to several potential buyers. WDI received a number of positive responses from the mailing, including a response from Atlantic Tele–Network (ATN).

At the time the agreement was entered into, Meredith knew Steven was keeping his plans to sell the corporation a secret from his estranged wife. Monica first learned of the agreement later when she and Steven attempted to reconcile. Before Monica learned of the agreement, WDI received some of the monthly consulting fees. Although Steven testified three American Telesis checks were delivered to WDI, Meredith contends he received only two $1500 payments. Steven testified he was able to make the payments without Monica's knowledge because both he and Monica had signature authority on corporate checks. After seeing the agreement, Monica indicated neither she nor the corporation agreed to its terms. However, according to the testimony of both Meredith and Monica, Meredith consulted with Monica and Monica assisted Meredith in providing financial information to a prospective purchaser.

Thereafter, on September 8, 1998, Monica wrote a letter to WDI stating American Telesis was terminating the agreement and instructing WDI to discontinue any work being done on behalf of American Telesis. Shortly after Monica sent the

letter to WDI, Monica, Steven, and their transactional attorney began working on the structure and agreement for the sale of the business to ATN. On November 13, 1998, the two companies signed a letter of intent to sell the assets of American Telesis to ATN. The letter of intent contained no provision denominated a back-out penalty or termination fee. When ATN later refused to complete the transaction, American Telesis filed suit. The lawsuit was eventually settled with ATN paying $42,500 to American Telesis.

WDI then brought this action against American Telesis for breach of contract, asserting it was entitled to unpaid monthly consulting fees and half of the settlement from ATN. The case was referred to a master, who dismissed the complaint after a hearing, concluding Steven's signature did not bind American Telesis to the agreement.

## LAW/ANALYSIS

■ WDI contends the trial court erred in determining Steven lacked authority to bind American Telesis to the agreement with WDI. We agree.

■ Agency may be implied or inferred and may be circumstantially proven by the conduct of the purported agent exhibiting a pretense of authority with the knowledge of the alleged principal. *Fernander v. Thigpen,* 278 S.C. 140, 143, 293 S.E.2d 424, 426 (1982). Under the doctrine of apparent authority, a principal is bound by its agent's acts "when it has placed the agent in such a position that persons of ordinary prudence, reasonably knowledgeable with business usages and customs, are led to believe the agent has certain authority and they in turn deal with the agent based on that assumption." *Id.* at 143, 293 S.E.2d at 426 (1982). A principal creates apparent authority as to a third person by the principal's written or spoken words or any other conduct which, "reasonably interpreted, causes the third person to believe the principal consents to have the act done on his behalf by the person purporting to act for him." *Muller v. Myrtle Beach Golf & Yacht Club,* 303 S.C. 137, 142, 399 S.E.2d 430, 433 (Ct.App. 1990), *overruled on other grounds by Myrtle Beach Hosp., Inc. v. City of Myrtle Beach,* 341 S.C. 1, 532 S.E.2d 868 (2000). Either the principal must intend to cause the third person to

believe the agent is authorized to act for him, or he should realize his conduct is likely to create such belief. An agency may not, however, be established solely by the declarations and conduct of an alleged agent. *Id.* at 142–43, 399 S.E.2d at 433.

American Telesis correctly notes Steven could not have bound the corporation to a sale of its assets. S.C.Code Ann. § 33–12–102 (1990). However, the agreement executed by Steven is not for the sale of the corporation's assets. It is essentially a contract for the purchase of consulting and marketing services designed, if successful, to result in a contract for the sale of the corporation or its assets. American Telesis endowed Steven with the title of vice president of marketing, a position calculated to lead people of ordinary prudence with reasonable knowledge of business usages to conclude that he had the authority to enter into such contracts on behalf of the corporation. Additionally, Steven's authority on such regular business matters would be a natural consequence of the corporation's size: American Telesis had only two shareholders, two officers, and two members of the board of directors. In organizations of this size, officers routinely have the authority to enter into day-to-day transactions. Indeed, Steven had signing authority on checks written on corporate accounts and, at the time of the signing of the agreement, Steven was the sole individual managing the affairs of the corporation, with Monica spending little or no time at the office. It is reasonable for a business person to believe that the individual in charge of the day-to-day operations of a corporation, in the absence and to the exclusion of other principals, is vested with authority to bind the corporation to the contract in question. Accordingly, American Telesis is bound by the contract Steven signed with WDI.

■ We now turn to the relief WDI seeks. As to monthly fees, we conclude WDI is entitled to payments for the period between mid-April, when the agreement was signed, and mid-November 1998, when the letter of intent was entered into with ATN. However, because the testimony at trial conflicted as to whether two or three payments had been made, we remand for the trial court to determine what amount American Telesis actually paid to WDI and thus the monthly fees still due WDI.

■ WDI also claims it is entitled to half the amount recovered from ATN based on its withdrawal from the transaction. We disagree.

As the plaintiff, WDI had the burden of establishing its entitlement to a portion of the settlement American Telesis reached with ATN. Although the agreement provided WDI was to receive half of any "back-out penalty, settlement or other similar termination consideration" paid to American Telesis, it did not define the term back-out penalty. No South Carolina case or statutory provision has been cited to us which defines the term, nor have we been successful in locating a definition in South Carolina jurisprudence. As the drafter of the contract, WDI was in the best position to prevent confusion in the contract's construction and should be the party to suffer from its shortcomings. *See Williams v. Teran, Inc.,* 266 S.C. 55, 60, 221 S.E.2d 526, 529 (1976) (noting an ambiguity in an agreement must be resolved against its drafter). Additionally, although the provision states WDI is entitled to half of any settlement, we conclude it envisioned a voluntary settlement as a natural consequence of any buyer's decision to walk away from a planned deal. However, the letter of intent between ATN and American Telesis did not provide for any back-out penalty and rather than a natural event of a failed purchase, the settlement came only after American Telesis filed suit. Because the agreement between WDI and American Telesis does not define back-out penalty, and the testimony in the record is that the letter of intent which was the subject of the lawsuit did not contain a provision for a backout penalty or termination fee, WDI has not met its burden of proof of showing that a settlement of a lawsuit constitutes a back-out penalty within the contemplation of the parties at the time the agreement was entered into.

**AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.**

HUFF, J., and CURETON, A.J., concur.