747 S.E.2d 494

**TOWN OF KINGSTREE, a Body Corporate and Politic, Respondent,**

v.

**Gary W. CHAPMAN, Jr., Terilyn J. McClary, Waccamaw Housing, Inc., Lydia F. Duke, Alice H. Kellahan, and South Carolina Department of Transportation, Defendants,**

**Of Whom Lydia F. Duke and Alice H. Kellahan are the Appellants.**

**Appellate Case No. 2012–205928.**

**No. 5162.**

Court of Appeals of South Carolina.

Heard April 11, 2013.

Decided July 24, 2013.

Larry G. Reddeck, of Nettles Turbeville & Reddeck, of Lake City; and William M. O'Bryan, Jr., of O'Bryan & O'Bryan, of Kingstree, for Appellants.

Ernest Joseph Jarrett, of Jenkinson Jarrett & Kellahan, PA, and Mary Amanda Harrelson Shuler, of Whetstone Perkins & Fulda, LLC, both of Kingstree, for Respondent.

KONDUROS, J.

Lydia F. Duke and Alice H. Kellahan (collectively, Appellants) appeal the special referee's order granting the Town of Kingstree's (the Town's) petition to close a portion of Porter Street, arguing (1) the Town was bound by the allegation in its petition that Appellants had an easement for the use of Porter Street; (2) Appellants had an express written easement across the area in question, which had not been abandoned; (3) the area in question was not properly dedicated as a public roadway or street; (4) the Town lacked statutory authority to petition to close the area in question; (5) the Town failed to prove Appellants had abandoned the easement; (6) the Town failed to prove the closure of the area in question was in the public interest; (7) the Town failed to plead or prove Appellants were estopped to object to the closing of the area in question; (8) the evidence did not support the special referee's finding Appellants purchased the easement to make Porter

Street a public road; and (9) the closure of Porter Street constituted a taking and Appellants are entitled to just compensation. We reverse.

## FACTS/PROCEDURAL HISTORY

In 1879, John T. Nelson purchased a substantial amount of property in the Town but could not obtain the title until he turned twenty-one years old. In 1899, he acquired the title. In 1903, he had the land platted, which showed twenty lots that were to be sold along a road that became known as Ashton Avenue and a road or alley [1] between Lots 13 and 14. In 1909, he sold Lots 13 and 14 to two separate buyers. Both deeds indicated the street between them was "a new Street" or "a New Side Street." Nelson retained the land to the South of the lots, and Marie L. Nelson inherited this land from her father in 1938. In 1981, John McIntosh inherited this land from Marie.

In 1993, Appellants purchased a 20.97–acre tract of property from McIntosh, which was part of the land he inherited from Marie. At the same time, Appellants also acquired from McIntosh a fifty-foot easement from Ashton Avenue to Nelson Boulevard. The easement stated that the property Appellants purchased was "bounded on the West by a proposed fifty (50) foot street or road know as Porter Street." Further, the easement stated, "Whereas the lands on the Western side of proposed road or street known as Porter Street were devised by Marie L. Nelson to the trustees under her last Will and Testament as will appear by reference to the same and whereas said devise may have included the proposed fifty (50) foot road or street known as Porter Street. . . ." The easement specified: "said proposed fifty (50) foot road or street should be opened and remain open for the mutual use and benefit of the owners of the lands of the Estate of Marie L. Nelson now held in trust and the owners of the twenty and ninety-seven hundredths (20.97) acres this day conveyed to [Appellants]." The easement further stated:

> The grantor does agree that the grantee, their heirs or assigns may take such steps and make such improvements as may be necessary to have said street or road opened and maintained as a public street or road and that grantor will

---

1. This area is now known as Porter Street and is the area at issue.

assist in such endeavor and that said street or road when opened shall be for the mutual use and benefit of the owners of property lying on either side of the same.

In 1998, several of the charities to which Marie had devised property in the same area sold their land to the Town in order for the Town to build a recreation complex. Part of Porter Street was within the boundaries of the land sold.

In 2003, Waccamaw Housing, Inc. agreed to purchase 2.15 acres of Appellants' property for a senior citizens housing project, contingent upon the zoning for the area being changed from highway commercial to planned unit development. Nehemiah Corporation on behalf of Waccamaw requested the rezoning of the property. On January 26, 2004, at the town council meeting, the Town had a first reading on the rezoning. Alice's husband, W.N. Kellahan, Jr.,[2] was present. After a council member indicated he had received calls from residents concerned about the development, the council decided to have a public hearing before the second reading.

The council held the public hearing on February 20, 2004, and discussed pedestrian traffic. Kellahan was unable to attend the public hearing and second reading because he was out of town. He and Senator John Yancey McGill had discussed that he would be absent. A council member asked if the developer was willing to close Porter Street on the Ashton Avenue side. J.W. Campbell responded that would only stop vehicle traffic, not pedestrian traffic. Senator McGill made a recommendation for a second reading of the ordinance with the understanding that Porter Street would be closed permanently from Ashton Avenue and a barricade and fence would be erected. The second reading of the rezoning immediately followed at a special meeting of town council. The council approved the ordinance to rezone the property with the amendment that Porter Street be blocked on the Ashton Avenue side. The minutes provided that Kellahan would fence his property line to within fifty feet of Highway 377, which Kellahan did.

---

2. Kellahan managed the acquisition, management, development, and sale of Appellants' property. He is a civil and structural engineer licensed in North Carolina, South Carolina, and Georgia for engineering and surveying.

On May 3, 2004, Waccamaw purchased the 2.15–acre tract from Appellants. Construction of the housing project began within sixty days of the zoning change approval and took approximately one year to complete.

On November 14, 2005, the Town filed a petition for abandonment and closure of the area. The Town named Appellants, Gary W. Chapman, Jr., Terilyn J. McClary, the South Carolina Department of Transportation (SCDOT), and Waccamaw as defendants. McClary and Chapman, who at the time owned the two lots that bordered the area at issue, Lots 13 and 14, did not answer and were held in default.[3] Both SCDOT and Waccamaw filed answers stating they had no objection to the closing. SCDOT stated Porter Street "is not shown as part of the State Highway System. SCDOT records do not find any file or documents for this section of road." Appellants filed an answer and counterclaim, requesting the petition be dismissed and if it was not, asking for just compensation for the termination of their rights to their easement based on a reduction in value to their property. The circuit court referred the matter to the special referee.

Following a hearing, the special referee ordered a portion of Porter Street be closed. The referee found the Town and Appellants "have unequivocally agreed that Porter Street would be used as a public road. Public funds were used for the paving of Porter Street and the original easement conveyed to [Appellants] underscores the desire to have the street opened and used for their benefit and members of the public." Additionally, the special referee found an agency relationship was established between Appellants and Senator McGill and thus, Appellants were bound by the deal brokered by Town Council with the input of Senator McGill. The referee also determined the closing would not affect emergency vehicles because they have other means of access and the part of the street to be closed was not in use. Further, the referee found:

> Porter Street is owned by the Town … as evidenced by the deeds for the purchase of the land for the recreation complex, the negotiated agreement to rezone the property to

---

3. Both of them later sold their lots, and the subsequent owners are in favor of the closure of the property.

permit the housing project, and the paving of a substantial portion of Porter Street using public funds. Although there was never a public dedication of Porter Street, Porter Street has been used by the public and all of the street except the length of one lot has been paved using public CTC funds which benefitted [Appellants]. Porter Street is therefore by the agreement and the actions of the parties to this litigation a public street.

The special referee further noted the deed from Appellants to Waccamaw did not contain an easement, evidencing that Porter Street was public. Additionally, the referee determined the closing would be in the best interests of the citizens and residents of the surrounding area and the Town, including abutting property owners and interested parties, and would not be prejudicial to abutting property owners or interested parties. The referee found the determination of the scope of an easement was one in equity and thus, found Appellants' counterclaim should be denied because they purchased the easement for the purpose of making Porter Street a public road. The special referee ordered the title for the property that was closed to be split equally between the owner of lots 13 and 14. On November 4, 2010, Appellants filed a motion to alter or amend pursuant to Rules 59(e) and 60, SCRCP.

The special referee denied the motion to alter or amend, finding: "Porter Street is a publically dedicated road which has been delineated on a number of plats since 1903. It was expressly dedicated to the public when the 1903 subdivision plat was recorded." The referee further found, "The public later accepted that dedication by using the roadway, albeit light use. Porter Street was dedicated to the public and accepted by the public prior to the easement granted by Samuel McIntosh to [Appellants]." The referee further found that "[e]ven if the portion of the road was not dedicated and accepted by the public, there is strict, cogent[,] and evincing convincing evidence that [Appellants] dedicated the easement to the public making it a public road." The referee found the grant contained a dedication by writing when it stated " 'proposed fifty (50) foot road or street should be opened and remain open for the mutual use and benefit of the owners of the lands of the Estate of Marie L. Nelson' . . . and . . . 'the parties have agreed that efforts should be made to have

[Porter] street opened and used for their benefit and members of the public who may need to use the same.'" (alterations by special referee). The special referee found pavement of the road was not a requirement for a dedication.

The special referee also found Appellants conveyed the land that adjoined the easement for the senior citizens housing developments without expressly retaining any easement rights. Additionally, he found Appellants knew the rezoning was approved based on the closing of an unpaved portion of the road. The referee therefore determined Appellants intended to abandon the easement and not retain any rights to the roadway.

The special referee found Porter Street could be closed pursuant to section 57-9-10 of the South Carolina Code. The referee determined the Town established Porter Street was a street used for vehicular travel and it had a right to close the street. The referee found Michael Kirby, the Community Planning and Development Director for the Town, testified it would be in the best interests of the residents of the Town that the street be closed. The referee also stated that one of the adjacent landowners testified "'people would just drive through all the time'" and vehicles had used the road since 1997 or 1998. The special referee found, "The closing of the portion of Porter Street is for the safety of landowners in the area, the public, and Town property." The referee stated, "The closing of Porter Street decreases foot and automobile traffic to the rear of the Recreation Center, and to the residential neighborhood located behind the Recreation Center. The Town has provided sufficient proof that the closing of Porter Street is in the best interests of the residents of the Town."

Further, the special referee determined because the land was dedicated to the public, Appellants were "not entitled to compensation as they have lost the ability to control the future use of the property." The referee noted McIntosh did not have an easement to grant Appellants, or if he did, the grant was dedicated to the public and was accepted.

Additionally, the special referee found although the defense of estoppel was not included as a defense in the Town's reply to Appellants' counterclaim, the issue was raised, thus allow-

ing it to be considered. The referee found an agency relationship was established between Appellants and Senator McGill because Kellahan testified he had sent Senator McGill to represent his interest and the intent of the principal determines whether an agency relationship exists. The referee found Senator McGill understood that a portion of Porter Street would be closed permanently to allow for the rezoning. "The representation that this portion of Porter Street would be permanently closed was made so that Town Council would agree to the rezoning. This representation would be reasonably calculated to induce the Town to act, and it did so." The referee found Appellants were able to sell a portion of their property because of the agreement "and are estopped from arguing that they do not want the unpaved section of Porter Street closed, or in the alternative, that they should be compensated for the extinguishment of their easement." This appeal followed.

## LAW/ANALYSIS

### I. Easement Issues and Dedication

Appellants argue because they had an express written easement across the area in question, which had not been abandoned, the Town was not entitled to close the area and they are entitled to continued and unrestricted use of the area for access. They maintain the Town failed to plead or prove they abandoned the easement. Additionally, they assert the area in question was not dedicated as a public roadway or street and as such, the Town is not entitled to close the area, preventing Appellants from having access and use of the area to access their property. Finally, Appellants argue the evidence does not support the special referee's finding they purchased the easement to make Porter Street a public road. It maintains the language in the easement is clear that the road is proposed. We agree.

An easement is a right to use the land of another for a specific purpose. *Steele v. Williams*, 204 S.C. 124, 132, 28 S.E.2d 644, 647 (1944). This right of way may arise by grant,[4]

---

4. "A reservation of an easement in a deed by which lands are conveyed is equivalent, for the purpose of the creation of the easement, to an express grant of the easement by the grantee of the lands." *Sandy Island Corp. v. Ragsdale*, 246 S.C. 414, 419, 143 S.E.2d 803, 806 (1965).

from necessity, by prescription, or by implication by prior use. *Boyd v. Bellsouth Tel. Tel. Co.*, 369 S.C. 410, 416, 633 S.E.2d 136, 139 (2006); *Steele*, 204 S.C. at 132, 28 S.E.2d at 647–48. "A grant of an easement is to be construed in accordance with the rules applied to deeds and other written instruments." *Binkley v. Rabon Creek Watershed Conservation Dist. of Fountain Inn*, 348 S.C. 58, 71, 558 S.E.2d 902, 909 (Ct.App. 2001) (quotation marks omitted).

"The determination of the existence of an easement is a question of fact in a law action and subject to an any evidence standard of review when tried by a judge without a jury." *Hardy v. Aiken*, 369 S.C. 160, 165, 631 S.E.2d 539, 541 (2006) (quotation marks omitted). "In a law case tried by the judge without a jury, this court reviews for errors of law and reviews factual findings only for evidence which reasonably supports the court's findings." *Eldridge v. City of Greenwood*, 331 S.C. 398, 416, 503 S.E.2d 191, 200 (Ct.App.1998).

 "However, the determination of the scope of the easement is a question in equity." *Hardy*, 369 S.C. at 165, 631 S.E.2d at 541. On appeal in an action in equity, the appellate court may find facts in accordance with its views of the preponderance of the evidence. *Grosshuesch v. Cramer*, 367 S.C. 1, 4, 623 S.E.2d 833, 834 (2005). Thus, this court may reverse a factual finding by the trial court in such cases when the appellant satisfies us the finding is against the preponderance of the evidence. *Campbell v. Carr*, 361 S.C. 258, 263, 603 S.E.2d 625, 627 (Ct.App.2004). This does not require the appellate court to disregard the findings of the trial court, which saw and heard the witnesses and was in a better position to evaluate their credibility. *Ingram v. Kasey's Assocs.*, 340 S.C. 98, 105, 531 S.E.2d 287, 291 (2000). Furthermore, the appellant is not relieved of the burden of convincing this court the trial court committed error in its findings. *Pinckney v. Warren*, 344 S.C. 382, 387–88, 544 S.E.2d 620, 623 (2001).

 "One claiming title by deed has no greater title than the original grantor in the chain of title upon which he relies." *Hoogenboom v. City of Beaufort*, 315 S.C. 306, 313, 433 S.E.2d 875, 880 (Ct.App.1992); *see also Belue v. Fetner*, 251 S.C. 600,

606, 164 S.E.2d 753, 755 (1968) (holding a deed cannot convey an interest the grantor does not have).

 "Any interested person, the State[,] or any of its political subdivisions or agencies may petition a court of competent jurisdiction to abandon or close any street, road[,] or highway whether opened or not." S.C.Code Ann. § 57–9–10 (Supp.2012).

> By creating a formal judicial procedure for terminating a public right of way over land, [Section 57–9–10] removes the uncertainty attending the common law of dedication and abandonment. It also ameliorates the rigor of the common law rule requiring strict proof of intent to abandon a public right of way before that right can be extinguished.

*S.C. Dep't of Transp. v. Hinson Family Holdings, LLC,* 361 S.C. 649, 655, 606 S.E.2d 781, 784 (2004) (internal quotation marks omitted) (alteration by court).

> "Highway", "street", or "road" are general terms denoting a public way for the purpose of vehicular travel, including the entire area within the right-of-way, and the terms shall include roadways, pedestrian facilities, bridges, tunnels, viaducts, drainage structures, and all other facilities commonly considered component parts of highways, streets, or roads.

S.C.Code Ann. § 57–3–120(1) (2006).

> Under [s]ection 57–9–20, the court is empowered to close roads on a finding that it is in the best interest of all concerned. A public street may not be vacated for the sole purpose of benefiting an abutting owner. However, the mere fact that the vacation was at the instigation of an individual who owns abutting property does not invalidate the vacation or constitute abuse of discretion, nor does the fact that some private interest may be served incidentally. On the other hand, it must appear clearly that no consideration other than that of public interest could have prompted the action.

*First Baptist Church of Mauldin v. City of Mauldin,* 308 S.C. 226, 229, 417 S.E.2d 592, 593–94 (1992) (citations omitted).

 "The determination of whether a roadway has been dedicated to the public is an action in equity." *Mack v. Edens,* 320 S.C. 236, 239, 464 S.E.2d 124, 126 (Ct.App.1995).

"As such, we have jurisdiction on appeal to find facts in accordance with our own view of the preponderance of the evidence." *Id.* "Dedication requires two elements. First, the owner must express in a positive and unmistakable manner the intention to dedicate his property to public use. Second, there must be, within a reasonable time, an express or implied public acceptance of the property offered for dedication." *Id.* (citation omitted). "[T]he burden of proof to establish dedication is upon the party claiming it." *Anderson v. Town of Hemingway,* 269 S.C. 351, 354, 237 S.E.2d 489, 490 (1977).

 "No particular formality is necessary to effect a common law dedication." *Boyd v. Hyatt,* 294 S.C. 360, 364, 364 S.E.2d 478, 480 (Ct.App.1988). "An intention to dedicate may be implied from the circumstances." *Id.* "Any act or declaration on the part of the dedicator which fully demonstrates his intention to appropriate [his] land to public use, or from which a reasonable inference of his intent to dedicate may be drawn, is sufficient." *Id.* (alteration by court) (internal quotation marks omitted). "However, absent an express grant, one who asserts a dedication must demonstrate conduct on the part of the landowner clearly, convincingly and unequivocally indicating the owner's intention to create a right in the public to use the property in question adversely to the owner." *Id.*

 "South Carolina law recognizes two types of implied dedication-one where the question of implied dedication arises from the sale of land with reference to maps or plats; the other when the dedication arises ... from an abandonment to or acquiescence in public use." *Vick v. S.C. Dep't of Transp.,* 347 S.C. 470, 477, 556 S.E.2d 693, 697 (Ct.App.2001) (alteration by court) (internal quotation marks omitted). "Only the owner of a fee simple interest can make a dedication." *Hoogenboom,* 315 S.C. at 316, 433 S.E.2d at 883. "The owner's intention to dedicate must be manifested in a positive and unmistakable manner." *Id.* at 317, 433 S.E.2d at 883. "A dedication need not be made by deed or other writing, but may be effectually made by acts or declarations. Intent to dedicate may also be implied from long public use of the land to which the owner acquiesces." *Id.* (citation omitted).

Nevertheless, dedication is an exceptional mode of passing an interest in land, and proof of dedication must be strict, cogent, and convincing. The acts proved must not be consistent with any construction other than that of a dedication, and dedication may not be implied from the permissive, sporadic, and recreational use of property. The record must contain evidence the owner of the property clearly, convincingly, or unequivocally intended to dedicate the property for public use.

*Mack,* 320 S.C. at 239, 464 S.E.2d at 126.

 "As with intention to dedicate, no formal acceptance by a public authority is necessary to show public acceptance. Acceptance may be implied by the public or a public authority continuously using or repairing the property." *Id.* "The use, repair, and working of the streets by public authorities is a mode of acceptance." *Tupper v. Dorchester Cnty.,* 326 S.C. 318, 326, 487 S.E.2d 187, 192 (1997). "The mere fact the County approved the plat does not constitute an acceptance of the proposed public dedication." *Id.* at 326–27, 487 S.E.2d at 192. "The nonassessment of taxes is a factor in the determination of dedication and acceptance. The payment of taxes on disputed property is evidence contrary to the intent to dedicate property to the public." *Id.* at 327, 487 S.E.2d at 192 (citation omitted). "It is the duty of the fact finder to determine whether or not the public dedication has been accepted." *Id.*

In *Mack,* this court found "the trial [court] correctly held the evidence insufficient to prove an implied dedication of the road." 320 S.C. at 240, 464 S.E.2d at 126. We determined the record supported the trial court's "conclusion that historical use of the road by the public was basically recreational or religious. Additionally, the evidence of public acceptance of the road [was] insufficient." *Id.* This court found no evidence (1) public authorities had maintained the road, (2) any portion of the property had been excluded from tax assessment, and (3) the deeds delineated a public road. *Id.* at 240, 464 S.E.2d at 126–27.

 "A recorded plat may be sufficient to disclose a landowner's intent to dedicate property to public use." *Van Blarcum v. City of N. Myrtle Beach,* 337 S.C. 446, 450, 523

S.E.2d 486, 488 (Ct.App.1999). "If a landowner subdivides and plats an area of land into lots and streets and then sells lots with reference to the plat, the owner manifests an intent to dedicate those common areas to be used by both the purchasers and the public, absent evidence of a contrary intent." *Id.* at 451, 523 S.E.2d at 488. However, in *Home Sales, Inc. v. City of North Myrtle Beach,* 299 S.C. 70, 78, 382 S.E.2d 463, 467 (Ct.App.1989), this court determined a legend on a subdivision plat that gave developers discretion whether or not to open avenues did not dedicate the avenues.

▇▇▇▇ "The essence of a dedication is that it shall be for the use of the public at large." *Timberlake Plantation Co. v. Cnty. of Lexington,* 314 S.C. 556, 560, 431 S.E.2d 573, 575 (1993). "A dedication must be made to the use of the public exclusively, and not merely to the use of the public in connection with a user by the owners in such measure as they may desire." *Id.* "[W]hile a landowner may dedicate land for a specific, limited, and defined purpose, he cannot retain discretion to alter or control future use of the property once it has been accepted by the public." *Id.* "[P]ublic dedications for a limited purpose are permissible, and ... where the dedicator's intended use of the property is clearly and specifically expressed, no deviation from such use may be permitted, no matter how advantageous the changed use may be to the public." *Id.*

▇▇▇▇ Owners of lots in a subdivision have a private easement that survives the vacation, abandonment, or closing of a portion of a road in the subdivision by the public authorities, independent of their right therein as a member of the public. *Blue Ridge Realty Co. v. Williamson,* 247 S.C. 112, 121, 145 S.E.2d 922, 926 (1965). When lots in a subdivision are sold by reference to a map or plat upon which roads are shown that are or become public highways, the private easement that arises upon such a sale survives the vacation, abandonment, or closing of the road or highway by the public. *Id.* "[P]ersons who own lots fronting on or adjacent to property dedicated as public streets or highways have such special property interests as entitle them to maintain a suit for the enforcement and preservation of the use of the property as such." *Id.* at 121–22, 145 S.E.2d at 926. "[P]ersons acquiring

lots of land according to a map showing a street thereon are entitled to enjoin other landowners, who also purchased according to such map, from closing a portion of such street on the vacation thereof, since they have a special property right or easement in the street, although not abutting on the portion closed and although they have ample means of ingress and egress notwithstanding the closing." *Id.* at 122, 145 S.E.2d at 927.

■■■■ "Whe[n] land is subdivided, platted into lots, and sold by reference to the plats, the buyers acquire a special property right in the roads shown on the plat. If the deed references the plat, the grantee acquires a private easement for the use of all streets on the map." *Murrells Inlet Corp. v. Ward,* 378 S.C. 225, 233, 662 S.E.2d 452, 455–56 (Ct.App.2008) (internal quotation marks omitted). In *Murrells Inlet,* the court found "[t]he easement referenced in the plat is dedicated to the use of the owners of the lots, their successors in title, and to the public in general." *Id.* at 233, 662 S.E.2d at 456. "As to the grantor, who conveyed the property with reference to the plat, and the grantee and his successors, the dedication of the easement is complete at the time the conveyance is made. The grantee receives a private easement at the time of conveyance in any streets referenced in the plat." *Id.* (citations omitted). When "lands are platted and sales are made with reference to the plat, the acts of the owner in themselves merely create private rights in the grantees entitling the grantees to the use of the streets and ways laid down on the plat or referred to in the conveyance." *Id.* at 234, 662 S.E.2d at 456 (internal quotation marks omitted). "Recordation of a plat containing an easement may be sufficient to show that the owner intended to dedicate that easement." *Id.*

■■■■■ "While dedication for public use is significant to the creation of a public easement, it is irrelevant to the determination whether a private easement exists." *Newington Plantation Estates Ass'n v. Newington Plantation Estates,* 318 S.C. 362, 365, 458 S.E.2d 36, 38 (1995). "Absent evidence of the seller's intent to the contrary, a conveyance of land that references a map depicting streets conveys to the purchaser, as a matter of law, a private easement by implication with respect to those streets, whether or not there is a

dedication to public use." *Id.* "As between an owner who has conveyed lots according to a plat and the grantee, the dedication of a private easement is complete when the conveyance is made." *Id.*

In *Vick*, 347 S.C. at 477, 556 S.E.2d at 697, this court found the plat alone did not conclusively manifest an intent to dedicate the road to the public, particularly in light of the fact that nearly all of the deeds the grantor prepared conveying the lots merely granted the buyer an easement for ingress and egress over the road. The court found this gave rise to the inference the grantor intended to retain ownership. *Id.* at 477–78, 556 S.E.2d at 697. The court noted that although the plat may have created a private right of easement between the grantor and the purchasers, "the fact that [the grantor] allowed this small group to use the road did not vest any rights in the public at large or convey an offer of the road to the county." *Id.* at 478, 556 S.E.2d at 697. The court recognized "[t]here is a clearly defined distinction between the rights acquired by the public through dedication effected by platting and sale, and the private rights acquired by the grantees by virtue of the grant or covenant contained in a deed which refers to a plat, or bounds the property upon a street through the grantor's lands. *Id.* (internal quotation marks omitted).

> [W]here lands are platted and sales are made with reference to the plat, the acts of the owner in themselves merely create private rights in the grantees entitling the grantees to the use of the streets and ways laid down on the plat or referred to in the conveyance. But these rights are purely in the nature of private rights founded upon a grant or covenant, and no public rights attach to such streets or lands until there has been an express or implied acceptance of the dedication evidenced either by general public use or by the acts of the public authorities.

*Id.* (alteration by court). The court concluded "a plat alone is not determinative of implied dedication whe[n] there is evidence of the grantor's contrary intent." *Id.* "When property is subdivided and sold according to a plat showing streets or roads, the grantees acquire a private easement in the streets, but the easement does not become a public easement until

there has been an express or implied acceptance of the dedication, evidenced either by general public use or by acts of the public authorities." *Id.* at 478–79, 556 S.E.2d at 698 (internal quotation marks omitted). In *Vick*, this court decided the evidence demonstrated no public acceptance: "Aside from the buyers of the five lots, there was no evidence of general use by the public or of acceptance or maintenance by city or county authorities." *Id.* at 479, 556 S.E.2d at 698. "Whe[n] land is divided into lots according to a plat, showing streets, and lots are sold and conveyed with reference to said plat, the owner thereby dedicates the streets to the use of the lot owners, their successors in title, and the public." *Helsel v. City of N. Myrtle Beach,* 307 S.C. 24, 27, 413 S.E.2d 821, 823 (1992). In *Helsel,* the court found "the acts of the original owner in developing the property in accordance with a recorded plat evidence an intent to dedicate the street end to public use." *Id.*

> The approval of the land development plan or subdivision plat may not be deemed to automatically constitute or effect an acceptance by the municipality or the county or the public of the dedication of any street, easement, or other ground shown upon the plat. Public acceptance of the lands must be by action of the governing body customary to these transactions.

S.C.Code Ann. § 6–29–1170 (2004).

In a Maryland Court of Appeals case, the court determined that in accepting a dedication, the county, "even in the absence of conditions, restrictions and limitations, necessarily takes the dedicated property subject to all of the existing rights of the [easement holders] in and to the same." *Armiger v. Lewin,* 216 Md. 470, 141 A.2d 151, 155 (Md.Ct.App.1958). The court held "if the [c]ounty . . . should ever close the street to public use, or abandon it, the rights of the [easement holders] to continue to use the [e]asement-if it still exists under the terms of the reservation which created it-would remain intact." *Id.*

"In some cases, acceptance of part of a single street offered for dedication by plat is acceptance of that part only and does not necessarily extend to the entire street. Generally, however, acceptance of part of the street amounts to acceptance of

the entire street." 23 Am. Jur. 2d *Dedication* § 43 (2002) (footnote omitted).

"By a common-law dedication the fee does not pass; the public acquires only an easement in the land designated for its use." 23 Am. Jur. 2d *Dedication* § 54 (2002). "The legal or equitable title to land is not lost or destroyed by dedication. The fee ordinarily remains in the proprietor with the public holding the easement in trust." *Id.* (footnotes omitted). "A defeasible fee simple can be granted by dedication if the express language in the conveyance or other evidence makes clear that such a limitation on the fee is intended." *Id.*

In a Montana Supreme Court case, the court held the property owner's dedication to the county of a road over which the homeowners' association had easement rights pursuant to an agreement for road maintenance and establishment of the homeowners' association did not extinguish the association members' easement rights, absent any language in dedication indicating the public right was exclusive or expressly extinguishing prior easement right. *Gibson v. Paramount Homes, LLC*, 360 Mont. 421, 253 P.3d 903 (2011).

A "dedication is permanent unless the land so dedicated is abandoned by the public or by the proper authority, or the highway has been vacated in due course of law." 23 Am. Jur. 2d *Dedication* § 57 (2002). "Whe[n] property dedicated to the public is abandoned or relinquished, the public's rights in the property are terminated and, by operation of law, it reverts to the original dedicator or to his or her heirs or grantees...." 23 Am. Jur. 2d *Dedication* § 64 (2002) (footnote omitted). "Generally, a mere misuse or nonuse does not constitute abandonment of land dedicated to public use. Thus, if a street has been dedicated and the dedication accepted, mere delay in opening and improving it does not work an abandonment." 23 Am. Jur. 2d *Dedication* § 63 Practice Guide (2002) (footnotes omitted).

Diverted use is authorized if it (1) is fairly within the terms of the dedication, (2) reasonably serves to fit the property for enjoyment by the public, and (3) is used in the manner contemplated. The dedicator is presumed to have intended the property to be used by the public, within the limitations of the dedication, in such way as is most convenient and

comfortable and according to not only the properties and usages known at the time of the dedication, but also to those justified by lapse of time and change of conditions.

*Id.* (footnotes omitted).

[A]n easement may be lost by abandonment and in determining such question the intention of the owner to abandon is the primary inquiry. The intention to abandon need not appear by express declaration, but may be inferred from all of the facts and circumstances of the case. It may be inferred from the acts and conduct of the owner and the nature and situation of the property, where there appears some clear and unmistakable affirmative act or series of acts clearly indicating, either a present intent to relinquish the easement, or purpose inconsistent with its further existence.

*Carolina Land Co. v. Bland,* 265 S.C. 98, 109, 217 S.E.2d 16, 21 (1975). The burden of proof is upon the party asserting abandonment to show the abandonment by clear and unequivocable evidence. *Id.* Mere nonuse of an easement created by deed will not amount to an abandonment. *Witt v. Poole,* 182 S.C. 110, 115, 188 S.E. 496, 498 (1936).

On the matter of dedication, this court makes findings of fact in accordance with our own view of the preponderance of the evidence, and the evidence must be strict, cogent, and convincing. *Mack,* 320 S.C. at 239, 464 S.E.2d at 126. The Town did not present sufficient evidence for the special referee to find there was a dedication, either in 1903 or 1993. The plat from 1903 simply shows an opening between lots 13 and 14. It is not labeled. When the lots were sold in 1909, the deeds referred to that area as a new street. This was not sufficient to show the intent of John Nelson to dedicate the area. Further, the language in the 1993 easement was not sufficient to dedicate the land to the public. While it states that efforts should be made for the streets be open to the public, it only demonstrates Appellants and McIntosh were planning on doing that, not that they had accomplished it. Kellahan testified that McIntosh informed him when Appellants purchased the property that the road had not been dedicated. He further testified that when purchasing the property, a title search revealed no dedication, which is why Appellants requested the easement. Kellahan testified

he did not know if Appellants received a separate tax notice for the area in question. Accordingly, the Town did not meet its burden of proof to establish a dedication.

 Additionally, the Town had to prove the area was accepted by the public. Kellahan testified Appellants had previously tried to dedicate the area in question to the Town but the Town would not accept it. He also testified the area Appellants purchased was used for agricultural purposes until a few years before the purchase and it was covered in weeds and broom straw. Kirby testified the area had never been developed as a road until the senior citizens housing was built and thus was never used for vehicular traffic. However, he also testified it was used as a dirt road entrance and exit one year for a "Pig Pickin" held at the recreation center. It was not used for that purpose in the following years due to citizens' complaints. Kirby also testified that prior to the recreation center being built, the road had two dirt lanes and one of those lanes was used to access a telephone substation.

One of the owners of the adjacent property testified that before the road was paved, it was a dirt road and there were little pine trees and "people would drive through all the time." However, she testified that when she bought her property, although the prior owners had told her that people were using the road as a cut through, there was no street there and she did not expect people to be driving or walking through the area. She stated it was all forest when she bought the property. She provided it is now all dirt, which she had the Town place there due to a mud problem. She further testified the Town has not maintained the street.

The owner of the other adjacent lot testified that although the road was unpaved and unimproved, cars had used it since he moved there in 1995. He testified he previously believed the street was a lot and tried to purchase it from the Town because of the traffic driving through the area. He stated that he was told at the courthouse it was not being used. He testified the area did not look like a street. Further, he provided that he used the area as his driveway when he purchased his house because it did not have a driveway. Because the evidence does not establish it was a public road, the special referee erred in finding for the Town on this issue.

 Further, when a subdivision is created, the property owners have a private easement in the roads. When John Nelson originally divided his property, any landowner that purchased the property would have an easement regardless of whether or not the roads became public. Several cases explicitly state that the public easement or dedication does not extinguish the private easement. Further, Appellants' easement from McIntosh stated it was for their use, not just the public's use. Therefore, regardless of whether the 1903 plat or Appellants' 1993 purchase of the easement from McIntosh was a dedication, they still had an easement. Accordingly, the special referee erred in finding the Town could close the road.

## II. Allegation in the Pleadings

 Appellants argue the Town was bound by the allegation in its petition that they had an easement for the use of Porter Street. We find this issue to be unpreserved for our review.

 "[B]ut for a very few exceptional circumstances, an appellate court cannot address an issue unless it was raised to and ruled upon by the trial court." *Lucas v. Rawl Family Ltd. P'ship*, 359 S.C. 505, 511, 598 S.E.2d 712, 715 (2004).

[P]arties are judicially bound by their pleadings unless withdrawn, altered[,] or stricken by amendment or otherwise. The allegations, statements, or admissions contained in a pleading are conclusive as against the pleader and a party cannot subsequently take a position contradictory of, or inconsistent with, his pleadings and the facts [that] are admitted by the pleadings are taken as true against the pleader for the purpose of the action.

*Postal v. Mann*, 308 S.C. 385, 387, 418 S.E.2d 322, 323 (Ct.App.1992).

This issue was first discussed at the hearing on Appellants' motion to alter or amend. The referee asked, "[T]here is no question that [Appellants] had an easement, right[?]" Appellants responded:

[T]hat's what I thought. The allegation is in the Complaint, the Petition, stated that. I think on page 11 and 18, the arguments in that second hearing, [the Town] said that they were the easement owners. In the Reply Memorandum I

got some indication that there was now a claim that there was a prior dedication, and the easement was no longer there. I'm just kind of amazed by that.

Later, Appellants stated:

> I'm not clear as to whether or not based on the pleadings it stated [Appellants] have an easement, and the record on page 11, says there is a recorded easement to [Appellants] which is the subject of this. We are asking that the easement be extinguished for a little portion at the end, and then on page 18 I think it is. [The Town] is again talking about the [T]own's property, pled and notified all adjoining property owners and also notified them talking about [Appellants]. The easement owners have specifically pled that they were easement owners, and when I read their Reply, the Opposition memorandum, I got there was a question whether or not it was a valid easement.

Appellants seemed to be arguing the Town admitted they had an easement in its petition to close the road.[5] However, at the hearing they did not cite to any case law or specifically state the Town should be bound by its statement. In their proposed order granting their motion for reconsideration they submitted to the referee, they stated, "The [Town], in its Petition, specifically states that [Appellants] have an easement. The statement is a clear, unequivocal admission by the plaintiff, without any qualification. There is no testimony, no other pleading or any other action by the [Town] to retract this admission in any manner." However, the special referee never ruled on it. If an issue has been raised at trial, and the trial court fails to rule on it, and it is raised again in a motion for reconsideration, the issue is preserved for appellate review even if the trial court does not rule on it. *See Pye v. Estate of Fox*, 369 S.C. 555, 565–66, 633 S.E.2d 505, 510 (2006). Here, that was not the case, as the issue was not raised until the hearing on the motion for reconsideration. The special referee did not rule on the issue in the order denying Appellants' motion to alter or amend, and Appellants did not file a subsequent motion for reconsideration. In *Coward Hund*

---

5. At the close of the hearing on the petition to close the road, the Town stated, "There is a recorded easement into [Appellants] which is the subject of this, and we are asking that that easement be extinguished for that little portion at the end."

*Construction Co. v. Ball Corp.*, this court distinguished when an issue is first raised at trial and when one is not raised until after trial. 336 S.C. 1, 4–5, 518 S.E.2d 56, 58 (Ct.App.1999) (*citing Payton v. Kearse*, 319 S.C. 188, 460 S.E.2d 220 (Ct. App.1995), *rev'd on other grounds*, 329 S.C. 51, 495 S.E.2d 205 (1998)). The issue in the present case did not arise until the special referee issued its order. Therefore, because Appellants did not make a motion for reconsideration when the special referee failed rule on it, it is not preserved for our review.

## III. Estoppel and Agency

Appellants allege the Town failed to plead or prove Appellants were estopped to object to the closing of the area in question because it maintained Senator McGill was serving as their agent at the meeting when the closure was suggested. We agree.

"[E]stoppel must be affirmatively pled as a defense and cannot be bootstrapped onto another claim." *Collins Entm't, Inc. v. White*, 363 S.C. 546, 562, 611 S.E.2d 262, 270 (Ct.App.2005). "The failure to plead an affirmative defense is deemed a waiver of the right to assert it." *Wright v. Craft*, 372 S.C. 1, 21, 640 S.E.2d 486, 497 (Ct.App.2006).

The elements of equitable estoppel for "the party claiming the estoppel are: (1) lack of knowledge and of means of knowledge of truth as to facts in question; (2) reliance upon conduct of the party estopped; and (3) prejudicial change in position." *Zabinski v. Bright Acres Assocs.*, 346 S.C. 580, 589, 553 S.E.2d 110, 114 (2001). The elements as to the party estopped are: (1) conduct by the party estopped amounting to a false representation or concealment of material facts; (2) the intention such conduct be acted upon by the other party; and (3) actual or constructive knowledge of the true facts. *Id.* "The burden of proof is upon the party who asserts an estoppel." *Blue Ridge Realty Co. v. Williamson*, 247 S.C. 112, 122, 145 S.E.2d 922, 927 (1965).

"A true agency relationship may be established by evidence of actual or apparent authority." *R & G Constr., Inc. v. Lowcountry Reg'l Transp. Auth.*, 343 S.C. 424, 432, 540 S.E.2d 113, 117 (Ct.App.2000). "The doctrine of apparent

authority focuses on the principal's manifestation to a third party that the agent has certain authority." *Id.* "[T]he principal is bound by the acts of its agent when it has placed the agent in such a position that persons of ordinary prudence, reasonably knowledgeable with business usages and customs, are led to believe the agent has certain authority and they in turn deal with the agent based on that assumption." *Id.* "Thus, the concept of apparent authority depends upon manifestations by the principal to a third party and the reasonable belief by the third party that the agent is authorized to bind the principal." *Id.* at 432, 540 S.E.2d at 118.

An agency may not be established solely by the declarations and conduct of an alleged agent. *WDI Meredith & Co. v. Am. Telesis, Inc.,* 359 S.C. 474, 479, 597 S.E.2d 885, 887 (Ct.App.2004). "Apparent authority must be established based upon manifestations by the principal, not the agent. The proper focus in determining a claim of apparent authority is not on the relationship between the principal and the agent, but on that between the principal and the third party." *R & G Constr.,* 343 S.C. at 432–33, 540 S.E.2d at 118 (citation omitted).

> Apparent authority to do an act is created as to a third person by written or spoken words or any other conduct of the principal which, reasonably interpreted, causes the third person to believe the principal consents to have the act done on his behalf by the person purporting to act for him.

*Id.* at 433, 540 S.E.2d at 118. "Either the principal must intend to cause the third person to believe the agent is authorized to act for him, or he should realize his conduct is likely to create such belief." *WDI Meredith,* 359 S.C. at 478–79, 597 S.E.2d at 887. To establish apparent agency, a party must prove the purported principal has represented another to be his agent by either affirmative conduct or conscious and voluntary inaction. *Watkins v. Mobil Oil Corp.,* 291 S.C. 62, 67, 352 S.E.2d 284, 287 (Ct.App.1986).

"The elements of apparent agency are: (1) purported principal consciously or impliedly represented another to be his agent; (2) third party reasonably relied on the representation; and (3) third party detrimentally changed his or her position in reliance on the representation." *R & G*

*Constr.,* 343 S.C. at 433, 540 S.E.2d at 118. "In the principal and agent relationship, apparent authority is considered to be a power which a principal holds his agent out as possessing or permits him to exercise under such circumstances as to preclude a denial of its existence." *Id.* "When a principal, by any such acts or conduct, has knowingly caused or permitted another to appear to be his agent, either generally or for a particular purpose, he will be estopped to deny such agency to the injury of third persons who have in good faith and in the exercise of reasonable prudence dealt with the agent on the faith of such appearances." *Id.* "A principal creates apparent authority as to a third person by the principal's written or spoken words or any other conduct which, reasonably interpreted, causes the third person to believe the principal consents to have the act done on his behalf by the person purporting to act for him." *WDI Meredith,* 359 S.C. at 478, 597 S.E.2d at 887 (internal quotation marks omitted). "The apparent authority of an agent results from conduct or other manifestations of the principal's consent, whereby third persons are justified in believing the agent is acting within his authority." *R & G Constr.,* 343 S.C. at 433–34, 540 S.E.2d at 118. "Such authority is implied where the principal passively permits the agent to appear to a third person to have the authority to act on his behalf." *Id.* at 434, 540 S.E.2d at 118. "Generally, agency is a question of fact." *Id.* "Agency may be implied or inferred and may be proved circumstantially by the conduct of the purported agent exhibiting a pretense of authority with the knowledge of the alleged principal." *Id.*

 Initially, Appellants are correct the Town was barred from asserting estoppel because it failed to plead it. Further, the special referee erred in finding Appellants were estopped due to Senator McGill being their agent.

Kirby testified nothing indicated Senator McGill attended the meeting on Appellants' behalf. Kellahan testified Senator McGill went to the meeting for him because he was going to be out of town but they had no discussion about closing the road. On cross-examination, he testified he sent Senator McGill to represent his interest. On redirect, he testified he never authorized Senator McGill to offer to close the road on his behalf and the closing of the road had not been discussed at the previous meeting. Senator McGill testified he attended

the meeting because he was interested in having senior citizens housing in Kingstree. He testified Appellants and Kellahan did not authorize him to take any action on their behalf at the meetings. He further testified he participated in the meetings because he believed his constituents needed more senior housing.

The Town did not establish Senator McGill was Appellants' apparent agent. The crux of apparent agency is that the principal holds out to a third party the agent is acting on his or her behalf. Although Kellahan testified he sent Senator McGill to represent his interests, nothing from the minutes of the meeting or the testimony, including Kirby's, indicates anyone at the meetings thought Senator McGill was acting on Appellants' behalf. Accordingly, the special referee erred in finding Appellants should be estopped from contesting the road closing.

## IV. Other Issues

Appellants also contend the Town lacked statutory authority to petition to close the area in question, the Town failed to prove the closure of the area in question was in the best interest of all concerned, and the closure of Porter Street constituted a taking and Appellants are entitled to just compensation in the amount of $100,000. Because we find the special referee erred in closing the road, we need not decide these issues. *See Futch v. McAllister Towing of Georgetown, Inc.*, 335 S.C. 598, 613, 518 S.E.2d 591, 598 (1999) (holding an appellate court need not review remaining issues when its determination of a prior issue is dispositive of the appeal).

## CONCLUSION

Based on the foregoing, the special referee's order is

**REVERSED.**

HUFF and WILLIAMS, JJ., concur.